In re GRAND JURY SUBPOENA SERVED ON John DOE.

John DOE, a Grand Jury Witness, Appellant,

v.

UNITED STATES of America, Appellee.

No. 417, Docket 89–6171.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1989.

Decided Sept. 18, 1989.

Opinion Nov. 8, 1989.

John Nicholas Iannuzzi, New York City (Iannuzzi and Iannuzzi, New York City, Joan A. Alpert, of counsel), for appellant.

James H. Rodio, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Robert E. Lindsay, Alan Hechtkopf, Kimberly M. Zimmer, Attys., Dept. of Justice, Washington, D.C., Andrew J. Maloney, U.S. Atty. E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before LUMBARD, CARDAMONE and FRIEDMAN,* Circuit Judges.

LUMBARD, Circuit Judge:

John Doe appeals from an order of the United States District Court for the Eastern District of New York, Wexler, *J.*, denying his motion to quash a subpoena compelling him to testify before the grand jury. After refusing to testify, appellant was held in civil contempt and ordered incarcerated until he appeared to testify. He remains under house arrest, and seeks a reversal of the contempt finding and a quashing of the subpoena.

*Having heard argument on September 13, 1989, we acted in compliance with the requirements of 28 U.S.C. § 1826(b) and on September 18 filed an order affirming the District Court. This opinion follows.

I.

On August 2, 1985, Suffolk County Judge Kenneth K. Rohl, acting at the request of the New York State Attorney General, and on the supporting affidavit of an investigator with the New York State Department of Taxation and Finance, issued an order authorizing state and federal law enforcement officials to conduct electronic surveillance of the offices of Sheldon Levine at 445 Broadhollow Road in Melville, New York. Levine and others, known and unknown, were suspected of committing grand larceny, falsification of business records, and conspiracy to commit these crimes in violation of New York Penal Law.

The investigation preceding the request for surveillance was conducted by the Long Island Gas and Oil Industry Task Force ("Task Force"), comprised of representatives from local, state, and federal law enforcement agencies, including the New York State Attorney General, local police departments and district attorneys, the Federal Bureau of Investigation, and the Internal Revenue Service. Created in 1982, the Task Force was charged with investigating the influence of organized crime on the distribution of fuel oil and gasoline on Long Island.

Judge Rohl's authorization, granted under New York's eavesdropping statute, N.Y.Crim.Proc.Law Art. 700 (McKinney 1984 and 1989 Supp.), allowed both the federal and state law enforcement officers on the Task Force to conduct the surveillance, but use of the intercepted communications was expressly limited to evidence of the three state crimes.

In November 1985, the New York Attorney General and the Assistant Attorney-in-Charge of the Organized Crime Strike

---

* Daniel M. Friedman, United States Court of Appeals for the Federal Circuit, sitting by designa- tion.

Force for the Eastern District of New York, both of whom were members of the Long Island Task Force, submitted affidavits to Judge Rohl stating that the surveillance conducted thus far had revealed evidence of federal crimes, including federal tax offenses, and requesting that the August 2 order be amended to permit the use of that evidence before a federal grand jury then investigating, among other crimes, violations of federal tax laws. On November 8, acting pursuant to a section of the federal eavesdropping statute, 18 U.S.C. § 2517(5), Judge Rohl granted their request and amended the August 2 order to allow all intercepted oral communications relating to federal crimes to be used in any federal grand jury proceeding or in any court of the United States. The federal crimes specifically listed in the amended order were 18 U.S.C. §§ 1962 and 1963 (relating to racketeer influenced and corrupt organizations); 18 U.S.C. §§ 1503, 1510 and 1512 (relating to obstruction of the due administration of justice, a criminal investigation and tampering with a witness); 18 U.S.C. § 1341 (relating to mail fraud); 18 U.S.C. § 1343 (relating to wire fraud); 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation, receipt and sale of stolen property); 18 U.S.C. §§ 1621, 1622 and 1623 (relating to perjury); 18 U.S.C. § 371 (relating to conspiracy); 26 U.S.C. §§ 7201, 7202, 7203 and 7206(1) and (2) (relating to violations of the tax laws); and Title 31 of the United States Code (relating to violations under the Currency and Foreign Transactions Reporting Act).

After the communications intercepted by the surveillance revealed appellant's name, a subpoena was issued on July 25, 1988 under the authority of the United States District Court for the Eastern District of New York directing him to appear and testify on September 14, 1988 before the federal grand jury. The appellant having failed to appear on the scheduled date, Judge Wexler in November 1988 ordered him to testify or show cause why he should not be compelled to do so.[1] At several hearings in June and July 1989 before Judge Wexler, appellant claimed that his suffering from a number of cardiovascular and respiratory ailments precluded him from testifying. On July 20, 1989, Judge Wexler found that the appellant was physically able and directed him to testify.

Meanwhile, on May 16, 1989, appellant moved to quash the subpoena, arguing, *inter alia*, that Judge Rohl's amended surveillance order impermissibly encompassed federal tax offenses not listed in 18 U.S.C. § 2516, the statute that specifies federal crimes for which surveillance is authorized. On August 4, Judge Wexler denied the motion to quash and twelve days later he denied reconsideration.

On August 16, appellant appeared before the grand jury and refused to testify, claiming a fourth amendment privilege based on the illegality of the surveillance order. After a hearing that same day, Judge Wexler determined that appellant understood the ramifications of his refusal to testify, cited him for civil contempt, and ordered him incarcerated.

## II.

Appellant objects to Judge Wexler's order on three grounds: first, that he was entitled to an *in camera* review of the validity of the surveillance order before he could be held in contempt; second, that the authorization is facially invalid under 18 U.S.C. § 2517; and third, that Judge Rohl lacked authority to permit surveillance relating to federal crimes. We reject all three contentions.

### A. In Camera *Review*

■ Appellant argues that grand jury witnesses are entitled, as a matter of law, to at least an *in camera* review of the validity of an eavesdropping order before they may be compelled to testify. We believe that Judge Wexler fully considered appellant's objections on August 4 and 12

---

1. The record is silent on the reason for the nearly three-year delay between Judge Rohl's November 1985 amendment of the surveillance order and the September 1988 subpoena of appellant. It is similarly bereft of an explanation for the delay between the September 1988 subpoena and the November 1988 show cause order.

and that an additional *in camera* review was not necessary. Judge Wexler was provided with the text of Judge Rohl's authorizations and the supporting affidavits, and he accorded appellant the opportunity to file papers in support of his motion to quash. Moreover, Judge Wexler considered Judge Nickerson's opinion in *United States v. Levine*, 690 F.Supp. 1165 (E.D. N.Y.1988), which had upheld the validity of the amended surveillance order, as it pertained to Levine, under 18 U.S.C. § 2517(5). Acknowledging that he was not bound by *Levine*, Judge Wexler noted that Judge Nickerson's reasoning was "both compelling and correct." Judge Wexler added: "Thus, even if [appellant] had standing to challenge the wiretap, this Court would deny his motion for the reasons discussed in Judge Nickerson's opinion." There was no need for an *in camera* review.

### B. Federal Crimes as "Other" Offenses Under 18 U.S.C. § 2517(5)

Appellant next argues that Judge Rohl's amendment of the initial order to allow surveillance for evidence of federal tax offenses was invalid under 18 U.S.C. § 2517(5). That section states:

> When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom

may be disclosed under oath at official proceedings if "authorized or approved by a judge of competent jurisdiction."

Appellant contends that the phrase "in the manner authorized herein" requires that amended orders address only such offenses as are specified in Section 2516. That section contains an extensive list of offenses for which surveillance is authorized but, as appellant notes, it does not

specify federal tax offenses—the offenses on which he was to be questioned by the grand jury.[2]

■ This issue—whether an amended order can authorize use of communications revealing evidence of crimes that could not have been investigated under an original order—is one of first impression in this Circuit. We hold that "other" offenses under Section 2517(5) may include offenses, federal as well as state, not listed in Section 2516 so long as there is no indication of bad faith or subterfuge by the federal officials seeking the amended surveillance order. The Government here concedes that the federal tax offenses at issue could not properly be investigated in the first instance by a Section 2516 order. We believe, however, that Congress intended that amended orders under Section 2517(5) could encompass federal crimes not listed in Section 2516. The Senate Report accompanying Section 2517(5) states that "other" offenses under that section "need not be designated 'offenses,' " an apparent exemption from the requirement that the offense be among those designated in the Section 2516 list. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin. News 2112, 2189 (hereinafter "Legislative History"). Our holding in *United States v. Tortorello*, 480 F.2d 764 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973), lends further support to this construction of the statute. Although we did not address this issue directly, we upheld an amended order under Section 2517(5) even though the offenses regarding which evidence was to be used—federal securities law violations—are not included in Section 2516. *See id.* at 781–83.

Appellant responds that allowing amended orders to permit use of evidence relating to offenses that may not be the subject of original orders would subvert the detailed scheme of Section 2516 and threaten the privacy interests the statute aims to pro-

---

**2.** Although both appellant and the Government agree that appellant was to be questioned regarding federal tax offenses, that fact is unclear from the record. The subpoena compelling appellant to appear and testify does not state the

scope of the grand jury's investigation. However, the subpoena does provide the name of the Government's counsel and identifies him as an attorney with the Tax Division of the Criminal Section of the Department of Justice.

tect. The Senate Report reveals, however, that Congress accommodated these concerns in the statute. It states that amended orders are permitted only upon "a showing that the original order was lawfully obtained, that it was sought in good faith and not as [a] subterfuge search, and that the communication was in fact incidentally intercepted during the course of a lawfully executed order." Legislative History at 2189.[3]

Each of these requirements is met here. Appellant does not contend in his brief, nor did he contend at oral argument, that the federal officials on the Task Force instigated the state's request for the first order largely to secure evidence of violations of federal tax crimes or that there was otherwise bad faith or deception on their part. The record demonstrates that the communications naming appellant were "in fact incidentally intercepted" under the authority of the first surveillance order. While Judge Rohl noted in the order that the targeted conversations would relate to, among other things, "theft of federal, state and local taxes," the supporting affidavit came from a state official, an investigator in the New York State Department of Taxation and Finance, and the order authorized the use of the intercepted communications only in prosecutions for state crimes. Through the Task Force, local, state, and federal officials were engaged in a cooperative effort to combat organized crime on Long Island. While it was of course possible that the surveillance relating to state crimes would reveal evidence of federal crimes—motor fuel is subject to both federal and state taxation—there is no indication, nor even any assertion by appellant, that the disclosures regarding federal crimes were anything other than an incidental by-product of the first surveillance. Based on that surveillance, a Suffolk County grand jury indicted Levine, the initial target of the investigation, charging him with numerous violations of New York penal law. See Levine, 690 F.Supp. at 1171. Moreover, the state's interest in pursuing

schemes such as Levine's is apparent: The affidavit supporting the first authorization stated, for example, that New York was losing at least $90 million per year in state tax revenue from such schemes.

In short, there is no showing that the federal authorities, by connivance with the state authorities, used the initial order as a pretext for uncovering evidence of crimes unauthorized by Section 2516. See Levine, 690 F.Supp. at 1169–71; accord United States v. McKinnon, 721 F.2d 19, 22–23 (1st Cir.1983) ("Evidence of crimes other than those authorized in a wiretap warrant are intercepted 'incidentally' when they are the by-product of a bona fide investigation of crimes specified in a valid warrant."); United States v. Pacheco, 489 F.2d 554, 564 (5th Cir.1974), cert. denied, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975).

Acceptance of the appellant's position would jeopardize the essential state-federal cooperation envisioned by the federal wiretapping statute and embodied in this case by the Task Force. We noted in United States v. Marion, 535 F.2d 697, 707 (2d Cir.1976), for example, that Congress, in enacting the surveillance statute, "specifically envisioned cooperation among law enforcement authorities of different jurisdictions where appropriate to enhance the effectiveness of electronic surveillance operations." The New York statute envisions similar cooperation by allowing surveillance to be conducted by both state and federal law enforcement officials. See United States v. Manfredi, 488 F.2d 588, 598 (2d Cir.1973), cert. denied sub nom. LaCosa v. United States, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

We noted in dicta in Marion that where state and federal officials jointly pursue an investigation and the surveillance reveals communications relating to federal offenses not listed in the initial authorization, such interceptions "would not ... be incidental." Id. at 707 n. 20. We now hold that the interceptions naming the appellant in the instant case were revealed incidental-

---

**3.** The Senate Report is sufficient as the full legislative history because Congress adopted the Senate bill. See Legislative History at 2112.

ly and without subterfuge, as the statute requires, even though they were the product of federal-state law enforcement cooperation.

### C. *Judge Rohl's Authority to Permit Surveillance Relating to Federal Crimes*

■ Appellant relies on our opinion in *Marion* to support his argument that the federal law enforcement officials improperly applied to a state judge for authorization to conduct surveillance for federal crimes. His reliance is misplaced. Like the instant case, *Marion* involved a surveillance order issued by a state judge to discover evidence of state crimes, which order was amended by the same judge to encompass evidence of additional, federal offenses. We found that the affidavit of the Assistant District Attorney requesting the judge's amendment "clearly provided the state judge ... with notification that possible federal offenses might be implicated" and thus satisfied Section 2517(5). *Id.* at 703. In contrast, because the federal grand jury in *Marion* also questioned the defendant based on information obtained from a different, *unamended* surveillance order, we found that the Government had "failed to obtain the subsequent judicial approval" required by Section 2517(5), and reversed the convictions for those offenses. *Id.* at 704. We expressly stated, however, that the statute does not "restrict ... the grant of subsequent judicial approval ... solely to federal judges." *Id.* at 708.

Moreover, Judge Rohl is a "judge of competent jurisdiction," expressly authorized under Section 2517(5) to amend surveillance orders. Section 2510 of the statute defines a "[j]udge of competent jurisdiction" as either (a) a judge of a United States district court or court of appeals *or* (b) "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." 18 U.S.C. § 2510(9). Appellant has not challenged Judge Rohl's authority under New York law.

Judge Rohl's amendment of the order in this case constitutes adequate judicial approval even though it encompassed federal criminal offenses that could not have been the legitimate subject of surveillance in the first instance. It would make little sense, and would serve no public policy, to deny federal law enforcement agencies the use of evidence that has been serendipitously discovered in the course of surveillance conducted according to law.

### III.

In sum, we reject appellant's objections to the subpoena to testify before the grand jury. Judge Wexler's order holding appellant in civil contempt and his incarceration of appellant, during the term of the grand jury, until he complies with the terms of the subpoena are affirmed.