UNITED STATES of America, Plaintiff–Appellee,

v.

SERVICE DELI INC., Defendant–Appellant.

No. 97–50241.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1998.

Decided July 16, 1998.

Steven D. Gordon, Holland & Knight, Washington, DC, for defendant-appellant.

**940**

Andrea Limmer, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: LAY,* GOODWIN and REINHARDT, Circuit Judges.

LAY, Circuit Judge:

Service Deli, Inc., appeals its jury conviction and sentence (five years probation, $64,000 fine) for filing a false statement with the U.S. Defense Commissary Agency (DeCA) in violation of 18 U.S.C. § 1001.[1] The government charged Service Deli with making a false statement of material fact to government investigators regarding collusion and price-sharing with a bid competitor, in order to obtain contracts to supply deli products on several military bases. For the reasons stated below, we reverse the judgment of conviction and grant the defendant a new trial.

## I. Background

This appeal arises out of a bid letting by the DeCA in May 1993 to supply and operate delicatessens, bakeries and pizza carts at several military commissaries. Service Deli and a second company, Eurpac Special Markets (ESM), were each awarded half the contracts, worth $4.8 million and $5 million respectively.

Service Deli's president, Gunther Ditzel, worked for ESM from 1972 until 1989, when he left to work for Service Deli. While Service Deli and ESM had a large percentage of common ownership, the record indicates that they were operated as separate entities and competed for the same contracts.

In July 1993, the DeCA received complaints from unsuccessful bidders, alleging that ESM and Service Deli shared core pricing information prior to submitting their bids. The DeCA then contacted Service Deli regarding the allegations. Ditzel responded with a letter that stated: "I was responsible for all bids and have never talked to anyone at Eurpac about pricing. I would swear to that."

Based on Ditzel's denial and a lack of any other evidence, the DeCA discontinued its inquiry and maintained the contracts. However, the DeCA referred the matter to the Justice Department for further investigation. Initially, Ditzel continued to deny Service Deli shared any price information with ESM. Eventually, however, Ditzel testified that he spoke with ESM's president on several occasions leading up to the 1993 bids, and told him the prices Service Deli intended to bid. He stated he lied to DeCA investigators initially because he did not want to lose the contracts.

At trial, the jury returned a verdict finding Service Deli guilty of filing a false statement in violation of 18 U.S.C. § 1001. Service Deli requested a judgment of acquittal after the presentation of evidence, and a judgment notwithstanding the verdict following the conviction. Both motions were denied. This appeal followed.

Service Deli maintains that the district court erred by (1) refusing to grant a judgment of acquittal or a judgment notwithstanding the verdict on the question of materiality; (2) refusing to give Service Deli's requested jury instruction regarding materiality; (3) curtailing cross-examination of Ditzel and another government witness; and (4) refusing to require production of all the government's handwritten interview notes pursuant to Federal Rule of Criminal Procedure 16.

## II. "Materiality" of Service Deli's false statement

■ Service Deli's main contention is that the alleged false statement Ditzel made to the DeCA was not "material" as required

---

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. 18 U.S.C. § 1001(a)(1), in pertinent part, states: "[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judi-cial branch of the Government of the United States, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact ... shall be fined under this title or imprisoned not more than 5 years, or both."

under § 1001, and therefore the district court erred in refusing to grant an acquittal. Denials of a judgment of acquittal and a judgment notwithstanding the verdict are reviewed de novo. *See, e.g., United States v. Hernandez,* 105 F.3d 1330, 1332 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 227, 139 L.Ed.2d 160 (1997).

The Supreme Court has stated that whether a false statement is material to an agency decision is a mixed question of fact and law typically resolved by juries. *See United States v. Gaudin,* 515 U.S. 506, 512, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Materiality is an essential element of the offense under § 1001 of making false statements and, therefore, a district court may not determine the materiality of a statement as a matter of law. *See Gaudin,* 515 U.S. at 522–23, 115 S.Ct. 2310; *United States v. Taylor,* 66 F.3d 254, 255 (9th Cir.1995) (per·curiam), *cert. denied,* —— U.S. ——, 117 S.Ct. 1105, 137 L.Ed.2d 307 (1997).

However, a judge may rule that a false statement is *not* material as a matter of law, that is, that the evidence is insufficient for the jury to find the statement is material. *See United States v. Gaudin,* 28 F.3d 943, 951 (9th Cir.1994), *aff'd,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Therefore, the issue before this court is whether substantial evidence was presented to support the jury's verdict on materiality.

This court has had many opportunities to address the question of what constitutes "materiality" within the context of § 1001. We have stated that the materiality requirement of a § 1001 violation is satisfied if the statement is *capable* of influencing or affecting a federal agency. *See, e.g., United States v. Boone,* 951 F.2d 1526, 1545 (9th Cir.1991); *United States v. Rodriguez–Rodriguez,* 840 F.2d 697, 700 (9th Cir.1988). The false statement need not have actually influenced the agency, *see, e.g., Boone,* 951 F.2d at 1545; *United States v. Vaughn,* 797 F.2d 1485, 1490 (9th Cir.1986), and the agency need not rely on the information in fact for it to be material. *See, e.g., Rodriguez–Rodriguez,* 840 F.2d at 700. In other words, "the test is the *intrinsic* capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances." *United States v. Salinas–Ceron,* 731 F.2d 1375, 1377 (9th Cir.1984) (internal citations omitted), *vacated on other grounds by* 755 F.2d 726 (9th Cir. 1985).

The Supreme Court's analysis of materiality in *Kungys v. United States,* 485 U.S. 759, 772, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), is relevant to our discussion. In *Kungys,* the Supreme Court established that a false statement is considered material if it has "a natural tendency to influence the decisions of the [agency]." [2] Here, there is no question that Service Deli's misrepresentation regarding the price sharing satisfied the applicable standard. At trial, a DeCA contracting officer testified that she relied upon Ditzel's denial of price sharing in making her decision to terminate the agency's inquiry. Had Service Deli admitted to sharing prices, she testified, she would have forwarded the information to DeCA legal counsel for further investigation.

Service Deli maintains that its statement cannot be considered material because an investigation by DeCA would not have revealed any wrongdoing. That is, if DeCA had pursued its investigation, the outcome would have been the same because the price sharing that took place was completely legal. While it may be correct that in some cases a misrepresentation may be immaterial because an investigation would have revealed no impropriety, that is not the situation here.

---

**2.** The eight Justices who decided *Kungys* (Justice Kennedy did not participate) authored five separate opinions. In Part II(A) of his opinion, Justice Scalia wrote that a misrepresentation is material if it "was predictably capable of affecting, *i.e.,* had a natural tendency to affect, the official decision." 485 U.S. at 771, 108 S.Ct. 1537. The part of Justice Scalia's opinion containing the test was joined by four other Justices and thus constitutes the opinion of the Court. Among those who concurred in Part II(A) were Chief Justice Rehnquist and Justices White and O'Connor. Justice Brennan also joined in the pertinent part of the opinion, but wrote separately to explain how the test applied in the specific statutory context. 485 U.S. at 783, 108 S.Ct. 1537.

The record before us merely demonstrates that price sharing among related companies is proper *in some circumstances*, not that price sharing was proper *in these circumstances*. Whether or not price sharing is proper in the case of commonly owned companies is a fact-intensive question. An investigation would have revealed the appropriate answer, but that investigation was never conducted. Accordingly, we conclude that Service Deli's denial of its price sharing conduct was, in the circumstances of this case, a material misrepresentation.

## III. Proposed jury instructions on materiality

Service Deli claims it was "hamstrung" in presenting its materiality defense when the district court refused to instruct the jury that (1) it is permissible for commonly owned companies to share prices and coordinate their bids, and (2) a federal agency cannot cancel a contract because of price sharing.[3] The company argues that without this instruction, "the jury was forced to determine this essential element of the offense ... in ignorance of the applicable procurement law...." *Appellant's Br.* at 37.

■ A defendant is entitled to an instruction concerning his or her theory of defense, if it is supported by law and has some foundation in the evidence. *See United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir.1990). A district court's formulation of jury instructions is reviewed for abuse of discretion. *See, e.g., Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1213 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998); *United States v. Ramos–Oseguera*, 120 F.3d 1028, 1037 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1094, 140 L.Ed.2d 149 (1998).

3. The defendant's proposed jury instruction No. 11(a) read:

Under federal procurement law, it is permissible for commonly owned or affiliated companies to submit separate bids or quotes in response to the same solicitation by a government agency. Further, it is permissible for commonly owned or affiliated companies to

■ We find the district court properly refused to give Service Deli's proposed jury instruction. The instruction contained an inaccurate statement of the law, because it implied that price sharing between commonly owned companies is always permissible. However, price sharing is only permissible in some circumstances. Therefore, giving the proposed instructions would have misled the jury in a material respect. *See United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir.1996) ("A defendant is entitled to an instruction on his theory of the case 'provided that it is supported by the law and has some foundation in the evidence.'" (internal citation omitted)).

## IV. Production of hand-written notes

Service Deli claims that the district court erred by refusing to require the government to produce all of its handwritten notes concerning interviews with Ditzel. It argues the non-disclosure of these notes requires a reversal of the conviction.

Before indicting Service Deli, the government interviewed Ditzel on seven occasions. Ditzel denied any price fixing during the first three interviews. In the fourth interview on Sept. 29, 1995, Ditzel stated for the first time that he discussed prices with ESM. This is also the first time the government took a written statement from Ditzel.

Ditzel subsequently was interviewed December 6, 1995, December 13, 1995, and September 5, 1996. At issue are the notes taken by antitrust division attorney Carla Addicks at the December 6 interview. The government did not turn over the notes of that interview, but instead produced a typewritten summary, dated October 9, 1996. In submitting the summary, the government represented to the district court that the memorandum contained the substance of the December 6 interview.

share prices and coordinate their bids in pursuit of the same agency solicitation. A federal agency cannot properly cancel or terminate a contract or BPA award, or otherwise sanction a bidder, because the commonly owned or affiliated companies discussed their prices or coordinated their bids or quotes.

*Appellant's* ER at 7.

Pursuant to an order of limited remand, the district court examined Ms. Addicks' December 6 notes to determine whether they contained any material information that had not been revealed to the defense. The district court found there was nothing in the notes that was "material to the matter at hand that was not discussed and disclosed in the memorandum." *United States v. Service Deli,* No. 97–50241 (S.D.Cal. Feb. 17, 1998) (certification to the Court of Appeals).

Subsequently, this court also reviewed Ms. Addicks' notes and compared them to the summary produced by the government. We found there were discrepancies between the notes and the summary memorandum sufficient to require the disclosure of the original notes to Service Deli. *See United States v. Service Deli,* No. 97–50241 (9th Cir. May 28, 1998) (order regarding production of notes). We then requested both parties to file letter briefs as to whether any discrepancies between the notes and the typewritten summary were prejudicial to the defense. *Id.*

■ Under the requirements set forth in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution is obligated to disclose material exculpatory evidence on its own motion and without request. *See Kyles v. Whitley,* 514 U.S. 419, 432–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "Evidence impeaching the testimony of a government witness falls within the *Brady* rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *United States v. Brumel–Alvarez,* 991 F.2d 1452, 1458 (9th Cir.1992) (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). Under Federal Rule of Criminal Procedure 16(a)(1)(A), "the government must disclose to the defendant and make available for inspection . . . that portion of any written record containing the substance of any relevant oral statement made by the defendant . . . in response to interrogation. . . ."

■ After comparing the hand-written notes to the government's typewritten summary and reviewing the arguments of the parties, we conclude the government violated the due process rights of the defendant by failing to disclose material information contained in the December 6 notes. Because the foundation of the government's entire case rests upon the testimony of one key witness, Gunther Ditzel, the reliability of that witness clearly is determinative of the defendant's guilt or innocence. *See Brumel–Alvarez,* 991 F.2d at 1458. Any impeachment evidence, therefore, falls within the *Brady* rule and should have been produced by the government.[4]

■ However, a failure to disclose *Brady* evidence "is constitutional error only if the information is *material,* that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed." *United States v. Amlani,* 111 F.3d 705, 712 (9th Cir.1997) (emphasis added). The government contends the non-disclosed information in the December 6 notes was not material because this information was either included in the typewritten summary, or otherwise known to the defense prior to trial. Our examination of the December 6 notes belies this assertion.

■ The notes reveal three key pieces of information the government failed to include in its typewritten summary. First, the notes show that during the first part of the December 6 interview, Ditzel repeatedly denied sharing specific price information with ESM. This occurred despite Ditzel's September 29 statement that he in fact did share prices. It is not until after government attorneys confronted Ditzel with his September statements that the notes show "[Ditzel] now recalls exchanging prices on the AGS contracts." Because of the non-production of the notes, and the omission in the government sum-

---

4. While the defense initially argued the non-production of December 6 notes was a violation of Federal Rule of Criminal Procedure 16(a)(1)(A), we believe the notes are more accurately characterized as *Brady* material. Rule 16 covers relevant oral statements of the *defendant.* While Ditzel was the former president of the defendant company, he was not the defendant at trial and in fact had become the defendant's chief adversary. Ditzel's statements, while perhaps technically covered by Rule 16, more accurately fall under *Brady* as impeaching testimony of a government witness.

mary of any change in Ditzel's story, Service Deli was denied the opportunity to cross-examine Ditzel at trial on his conflicting December 6 statements.

Second, the Addicks notes indicate that during the interview Ditzel at first "backed away from what he said before." When agents showed Ditzel his September statement in which he admitted to price sharing, Ms. Addicks' notes state: "[Ditzel] said he was told of a possible jail sentence back in Sept. So he wanted to avoid this happening." This undisclosed statement, indicating Ditzel may have changed his story to avoid jail, goes to Ditzel's motivation to testify and clearly could have been used by the defense at trial to impeach his credibility.

Finally, and perhaps most significantly, the Addicks notes show that Ditzel explained his inconsistent statements on price sharing by saying "[h]e had a stroke which affected his memory." Once again, this statement was not included in the government's interview summary. This admission directly reflects Ditzel's ability to accurately recall events and recount them at trial. Had the information been disclosed, Service Deli could have pursued this significant avenue of impeachment, subpoenaed Ditzel's medical records, or called an expert witness on stroke-affected memory. Instead, the non-disclosure of this information obscured a key factor that could have been used to further assess Ditzel's credibility as a witness.

The government contends that, even if the non-produced information were to be considered "impeachment material" under *Brady*, the defense was not prejudiced because this was cumulative impeachment evidence, and "each of these areas of impeachment was in fact brought out by [Service Deli] at trial." It makes little sense to argue that because Service Deli tried to impeach Ditzel and failed, any further impeachment evidence would be useless. It is more likely that Service Deli may have failed to impeach Ditzel because the most damning impeachment evidence in fact was withheld by the government.

If this had been a case in which the government presented multiple witnesses, or strong evidence to support the testimony of a key witness, or evidence of guilt was otherwise overwhelming, withholding of impeachment material might not have affected the trial's outcome. But here, the government's entire case rested on Ditzel's testimony. Service Deli's defense was built around attacking Ditzel's credibility as a witness. In that sense, Ditzel's credibility was not just a major issue; it essentially was the only issue that mattered.

For these reasons, we conclude Service Deli was prejudiced by the government's non-disclosure of the December 6 notes. This violation of due process rights under *Brady* requires us to vacate Service Deli's conviction, and remand the case to the district court for a new trial.

## V. Conclusion

For the above cited reasons, we conclude that the district court's rulings regarding materiality and the jury instructions were correct. However, because we find that the government should have produced its original notes containing material discrepancies from the memorandum and that withholding these notes was prejudicial, we grant defendant a new trial.[5]

Judgment REVERSED and REMANDED for a new trial.

---

5. In view of our holding, it is not necessary to pass on the questions raised by the trial court's rulings relating to cross-examination.