UNITED STATES of America,
Plaintiff—Appellee,

v.

Fidel BELTRAN, Defendant—
Appellant.

No. 04–10099.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 18, 2005.

Decided June 14, 2005.

Jeffrey H. Jacobson, Esq., USTU—Office of the U.S. Attorney, Tucson, AZ, for Plaintiff—Appellee.

Richard H. Bitters, Esq., Christine Esser, Pasadena, CA, for Defendant—Appellant.

Before: HAWKINS, MCKEOWN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

While attempting to cross the border into Mexico, Fidel Beltran was arrested and charged with violating 31 U.S.C. §§ 5316 and 5332 and 18 U.S.C. § 1001.

He was convicted by a jury on all three counts. He appeals; we reverse.

Title 31 U.S.C. § 5316 proscribes an individual from willfully failing to file a report declaring the amount of money in his possession whenever he departs from the United States transporting more than $10,000. Section 5316 is not a strict liability crime. In order to violate § 5316, Beltran had to know how the $10,000 was calculated because if he did not understand he was transporting more than $10,000 under § 5316, he could not have willfully failed to file a report. Specifically, he had to know that he was required to aggregate the funds he and his wife were carrying for the purpose of determining whether he was carrying more than $10,000, thereby triggering the reporting requirement.

There is no evidence Beltran knew he was required to aggregate the funds at the time he was asked for his binding declaration at the border. The United States Customs Agent individually advised each of the passengers in the car, including Beltran, that it was "not illegal to transport more than $10,000 into Mexico, but when you transport it, you have to report it," and asked each occupant if he/she understood the law. The Agent made no mention of the fact that in some circumstances a passenger is required to aggregate his funds with other occupants in a motor vehicle to determine if he is carrying over $10,000.[1] The Agent's emphasis on the amount the individual was transporting, as opposed to some aggregate amount, appears consistent with how Beltran understood the reporting requirement at the time he reached the border. Nota-

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. In fact, as evidenced by the vague testimonies of the two border inspectors at trial, it appears the government has failed to communicate a clear standard whereby a passenger in a motor vehicle would know *ex ante* when he was required to aggregate the funds he was carrying with other passengers, thereby triggering the reporting requirement under § 5316.

bly, the morning they left home, Beltran gave his wife $4,000 to carry so that individually both he and his wife would be transporting less than $10,000. If Beltran had understood he would be required to aggregate the funds he and his wife were carrying for purposes of triggering the reporting requirements, there would have been no point in dividing the money between them prior to reaching the border.

Furthermore, once he understood that the amount of money his wife was carrying might have significance, Beltran volunteered that she was carrying $4,000. Not only was Beltran's admission unsolicited, it is not clear that the agents had any intention of searching his wife for additional cash. Yet, instead of explaining to Beltran at the time of his voluntary declaration that under these circumstances he and his wife needed to aggregate the amount of money they were carrying for purposes of the reporting requirement and providing him with a form to declare the currency, Beltran was arrested for violating § 5316. *Cf. United States v. $122,043*, 792 F.2d 1470, 1472 (9th Cir.1986) (after explaining to the defendant that she was required to report her husband's money that she was transporting the agents brought the defendant the appropriate customs form to complete). Because at the time he made his declaration there is no evidence in the record to support a finding that Beltran knew he was required to aggregate his funds with the cash his wife was carrying, Beltran did not willfully fail to file a report in violation of § 5316. We reverse the conviction.

Unlike 31 U.S.C. § 5316, which is a reporting offense, 31 U.S.C. § 5332 is a smuggling offense and an individual is guilty of violating § 5332 only if he knowingly conceals more than $10,000 on his person or in any conveyance or container in an attempt to transport the money out of the United States. Beltran was carry-

ing $8,177 on his person, yet he told the agents he was only carrying $7,000. Accordingly, he was concealing $1,777 on his person.

■ The government asserts that notwithstanding the fact that he declared $7,000 of the money he was carrying, Beltran was guilty of concealing the entire $8,177 found on his person for purposes of § 5332. Even conceding that to be true, Beltran could only be guilty of violating § 5332 if the $4,000 his wife was carrying is included in the amount he was attempting to smuggle, otherwise the dollar amount found in his possession would not trigger the $10,000 threshold. Under the statute it is not enough that Beltran knew his wife was carrying the money, because he is not responsible for funds concealed on another person, only funds concealed in a conveyance. Accordingly, in order to aggregate the money his wife had in her possession for purposes of § 5332, Beltran had to know that his wife was carrying the $4,000 in her diaper bag. There is no record evidence to support a finding that Beltran knew whether his wife was carrying the $4,000 on her person or in a conveyance. Because Beltran did not knowingly conceal more than $10,000 on his person or in any conveyance, we reverse his conviction for violation of 31 U.S.C. § 5332.

■ Finally, Beltran was convicted of violating 18 U.S.C. § 1001 for knowingly and willfully making a materially false statement in a matter within the jurisdiction of the executive branch of the U.S. government. A statement is material if it "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988); *see United States v. Service Deli, Inc.*, 151 F.3d 938, 941 (9th Cir.1998). Because the amount Beltran was actually

carrying, $8,177, was below the $10,000 reporting requirement, the only way his statement that he was carrying $7,000 could have been material was if the misstatement had a tendency to influence, or was capable of influencing the Customs Agent. There is no record evidence that that was the case and the government has failed to explain how Beltran's misstatement was capable of influencing the Custom Agent's decisionmaking process. Notably, immediately upon being told Beltran was carrying $7,000, the Customs Agent referred Beltran to secondary inspection in order to verify the count. Therefore, the record evidence suggests that whether Beltran had told the Agent he had $7,000 or $8,177, he would have been sent to secondary inspection. Accordingly, Beltran's misstatement was immaterial as a matter of law. We reverse his conviction for violation of 18 U.S.C. § 1001.

REVERSED.