19-2423-cr (L)
*United States v. Brettschneider, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of October, two thousand twenty.

PRESENT:   BARRINGTON D. PARKER,
                    DENNY CHIN,
                                *Circuit Judges*,
                    JANE A. RESTANI,
                                *Judge*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                                *Appellee*,

                    -v-                                        19-2423-cr, 19-3164-cr

SCOTT BRETTSCHNEIDER, aka Mighty Whitey,
JOHN SCARPA, JR.
                                *Defendants-Appellants*,

---

*        Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

CHARLES GALLMAN, aka T.A., RICHARD MARSHALL, aka LOVE, REGINALD SHABAZZ-MUHAMMAD, aka REGGIE,

         *Defendants*.±

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:

ANDREY SPEKTOR, Assistant United States Attorney (Jo Ann M. Navickas, Margaret Gandy, David C. James, and Keith D. Edelman, Assistant United States Attorneys, *on the briefs*), *for* Seth D. DuCharme, United States Attorney for the Eastern District of New York, Brooklyn, New York.

FOR DEFENDANT-APPELLANT BRETTSCHNEIDER:

JAMIE T. HALSCOTT, Orlando, Florida.

FOR DEFENDANT-APPELLANT SCARPA:

GILBERT GAYNOR, New York, New York.

Consolidated appeals from the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED.**

Defendants-appellants Scott Brettschneider and John C. Scarpa, Jr. are attorneys who were charged, in a superseding indictment, with engaging in separate

---

±     The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

criminal conspiracies involving a mutual associate, Charles Gallman. After Gallman pleaded guilty, the charges were severed and Brettschneider and Scarpa were tried separately. Brettschneider was convicted of conspiracy to make and making false statements in violation of 18 U.S.C. §§ 371 and 1001(a)(2). Scarpa was convicted of conspiracy to use and use of interstate facilities in aid of racketeering in violation of 18 U.S.C. §§ 371 and 1952(a)(3)(A). The district court sentenced Brettschneider principally to four years' probation, and Scarpa principally to thirty months' imprisonment. Brettschneider and Scarpa appeal their convictions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. *Brettschneider*

Brettschneider was convicted of making, and conspiring to make, false statements to the Bureau of Prisons ("BOP") on behalf of Richard Marshall, a federal inmate and Brettschneider's client who was convicted of narcotics trafficking. Specifically, the government charged that Brettschneider recruited a co-defendant, Shabazz-Muhammad, his paralegal and a certified drug counselor, to write a false letter regarding Marshall's purported history of substance abuse to secure Marshall a place in the Residential Drug Abuse Program ("RDAP") at the United States Penitentiary ("USP") Lewisburg, successful completion of which could have qualified Marshall for early release from prison.

3

On appeal, Brettschneider argues that the district court (1) erred in denying his motions to set aside the verdict pursuant to Federal Rules of Criminal Procedure 29 and 33; (2) constructively amended the indictment; and (3) erred in denying his motion to suppress evidence obtained from a wiretap.

## A.     *Rule 29 and Rule 33 Motions*

"We review the denial of a motion for a judgment of acquittal *de novo*," and to prevail, "the defendant must demonstrate that no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Kirsch*, 903 F.3d 213, 229 (2d Cir. 2018) (internal quotation marks omitted).  In evaluating whether this burden has been met, "we consider all of the evidence . . . in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *Id.* (internal quotation marks omitted).  We review the denial of a motion for a new trial for abuse of discretion and "assess [the district court's] findings of fact in connection with such a denial for clear error." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018).

Brettschneider argues that the false statements in Shabazz-Muhammad's letter were insufficient to establish materiality, a necessary element of the substantive charge of making false statements.  *See* 18 U.S.C. § 1001(a)(2) (providing that the government must prove, *inter alia*, that the defendant made a "materially false . . . statement").  We disagree.

4

Materiality is "broadly construed," *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997) (internal quotation marks omitted), and "does not require proof of actual reliance," *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) (internal quotation marks omitted).  Rather, "the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end."  *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (2d Cir. 1998) (internal quotation marks and emphasis omitted).

Here, the letter was intrinsically capable of influencing BOP's decision regarding Marshall's admission to RDAP: Where, as here, an inmate's presentence report does not indicate substance abuse in the relevant period, BOP may consider records such as a letter from a drug counselor verifying treatment.  BOP reviewed the letter here.  Accordingly, we conclude that the jury did not act irrationally when it found that the element of materiality was satisfied.  *See United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999).

B.      *Constructive Amendment of the Indictment*

We review a claim that the district court's jury instructions amounted to a constructive amendment of an indictment *de novo*.  *See United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018).  To prevail on a constructive amendment claim, the defendant must show "that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that . . . it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment."  *United States*

5

*v. Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013) (internal quotation marks omitted).  Here, the district court's instruction on materiality in its final charge to the jury differed from the instruction of materiality included in a draft jury charge it had earlier circulated to the parties.  Brettschneider argues that the district court so expanded the definition of materiality in the actual jury instruction that it amounted to constructive amendment of the indictment.

It did not.  The revised definition -- providing that "[a] fact is material if it has a natural tendency to influence or is capable of influencing the government's decisions or activities," Brettschneider App'x at 1438 -- merely sharpened and did not expand the draft definition -- "[a] fact is material if it was capable of influencing the government's decisions or activities," Brettschneider App'x at 224 -- bringing it into line with the definition articulated by the Court in *United States v. Gaudin*, 515 U.S. 506, 509 (1995).  Accordingly, Brettschneider's constructive amendment challenge fails.

C.   ***Motion to Suppress Evidence Obtained from Wiretap***

In the district court, both Brettschneider and Scarpa moved to suppress evidence obtained from a wiretap of Gallman.  Brettschneider argues (as does Scarpa) that the initial wiretap application failed to satisfy the necessity requirement and that the district court erred in failing to suppress incidentally intercepted communications relating to the letter because there was no probable cause to believe the anticipated communications would fall under a designated New York State offense.  We disagree.

6

On appeal from the denial of a motion to suppress, "we review a district court's legal conclusions *de novo* and its factual findings for clear error, viewing the evidence in the light most favorable to the government," *United States v. Schaffer*, 851 F.3d 166, 173 (2d Cir. 2017), and grant "considerable deference to the . . . court's decision whether to allow a wiretap, ensuring only that the facts set forth in the application were minimally adequate to support the determination that was made," *United States v. Concepcion*, 579 F.3d 214, 217 (2d Cir. 2009) (internal quotation marks omitted).

Section 2518 of Title 18 of the U.S. Code sets out the process for intercepting communications and provides that the judge must determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c), (3)(c). These requirements are not intended to preclude wiretapping until other means of investigation have been "exhausted," however, but rather "only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999) (internal quotation marks and alteration omitted).

While the crimes that may be investigated by wiretap are limited by statute, *see* 18 U.S.C. § 2516, when an authorized wiretap intercepts conversations related to criminal activity other than that specified in the warrant, "disclosure or use of

7

those communications is permissible provided a subsequent application made to a judge of competent jurisdiction demonstrates the good faith of the original application." *United States v. Goffer*, 721 F.3d 113, 122-23 (2d Cir. 2013) (internal quotation marks and alterations omitted); *see also* 18 U.S.C. § 2517(5). Such incidentally discovered criminal activity need not be among the crimes enumerated in § 2516. *See Doe v. United States* (*In re Grand Jury Subpoena*), 889 F.2d 384, 387 (2d Cir. 1989). Moreover, 18 U.S.C. § 2517(5) provides that law enforcement may use incidentally captured communication provided the original application was made in good faith if the issuing judge is notified of the communications "as soon as practicable," 18 U.S.C. § 2517(5), and federal -- not state -- law governs the use of a state-issued wiretap warrant in a federal case, *see United States v. Amanuel*, 615 F.3d 117, 122 (2d Cir. 2010).

Law enforcement is not required to exhaust all investigative techniques before obtaining an eavesdropping warrant, *see Diaz*, 176 F.3d at 111, and accordingly Brettschneider's argument that the investigators' alleged failure to do so renders the initial warrant improper is unavailing. Further, here law enforcement timely amended the eavesdropping warrant after the wiretap uncovered criminal activity beyond that for which the warrant was initially obtained. *See Amanuel*, 615 F.3d at 122; 18 U.S.C. § 2517(5). That Brettschneider's criminal activity was not among the crimes enumerated in § 2516 is inapposite, as this limitation of § 2516 does not apply to incidentally discovered crimes. *See In re Grand Jury Subpoena*, 889 F.2d at 387.

8

Accordingly, we conclude that the district court did not err in denying Brettschneider's motion to suppress the evidence obtained from the wiretap.

## II.    *Scarpa*

Scarpa was convicted of using, and conspiring to use, interstate facilities in aid of racketeering in violation of the Travel Act.  Specifically, the government charged that Scarpa, while representing Reginald Ross in a state murder trial, conspired with Gallman to bribe Luis Cherry, a witness in the Ross trial, into falsely testifying. Under their plan, Cherry, already serving a lengthy prison sentence, would receive assistance with appeals and reputational benefits within the prison system, and, in return, he would falsely testify that Ross did not participate in the murder of John Williams, one of the two murder victims at issue in the Ross trial, and that Cherry alone killed Williams.

On appeal, Scarpa argues that (1) his conviction was not supported by substantial evidence; (2) the district court erred when it admitted evidence related to a witness in a separate trial; and (3) erred in denying his motion to suppress evidence obtained from the Gallman wiretap.

### A.    *Sufficiency of the Evidence*

"We review challenges to the sufficiency of evidence *de novo*." *United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015).  A defendant "bears a heavy burden because we view the evidence in the light most favorable to the government, drawing

9

all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id*. at 838 (internal quotation marks omitted). "We will sustain the jury's verdict if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

Scarpa was convicted of using cell phones with the intent to promote, manage, establish, carry on, and facilitate an unlawful activity, bribery under state law. Here, New York Penal Law § 215.00 provides in pertinent part:

> A person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement of understanding that (a) the testimony of such witness will thereby be influenced . . . .

Scarpa argues that there was insufficient evidence to find that he offered, agreed to provide, or actually provided the witness with any benefit in return for his testimony. We disagree.

The government presented sufficient evidence to convince a rational juror that Scarpa and Gallman had offered to provide Cherry a benefit in return for his false testimony. The evidence included, for example, intercepted communications in which Scarpa and Gallman discussed "a bunch of stuff" that Cherry wanted, Scarpa App'x at 815, and that Cherry was willing to do "whatever" Scarpa needed, *id*., and however Scarpa wanted to "play it," *id.* at 813. Other intercepted communications detailed

10

specific benefits that Cherry would receive, such as help with his appeals and reputational benefits inside the prison system. The evidence also showed that following these communications, Cherry indeed perjured himself to exonerate Ross regarding Williams's murder.

Accordingly, the district court did not err in finding there was sufficient evidence for Scarpa's conviction.

**B.** *Admission of Calls and Text Messages Relating to Another Witness*

"We review evidentiary rulings for abuse of discretion. To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (citations and internal quotation marks omitted).

Evidence of a crime, wrong, or other act is inadmissible to prove a defendant's criminal propensity. Fed. R. Evid. 404(b)(1). Under the "inclusionary" approach, however, such evidence may be admitted for "any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Lyle*, 919 F.3d 716, 736 (2d Cir. 2019) (internal quotation marks omitted). This balancing test is satisfied if the evidenced conduct is not "any more sensational or disturbing than the alleged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (internal quotation marks omitted).

11

Proving intent is a proper purpose under Rule 404(b). *United States v. Williams*, 930 F.3d 44, 63 (2d Cir. 2019). In introducing prior bad acts to prove intent, the prior bad act "need not be identical to the charged conduct . . . so long as the evidence is relevant in that it provides a reasonable basis for inferring . . . intent." *United States v. Cadet*, 664 F.3d 27, 32-33 (2d Cir. 2011). In such cases, the evidence must be "sufficiently similar to the conduct at issue." *Id*. at 32 (internal quotation marks omitted). Evidence of prior bad acts is also admissible "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Rosemond*, 958 F.3d at 125 (internal quotation marks omitted).

Scarpa contends that the district court abused its discretion in admitting into evidence the calls and text messages relating to efforts by Scarpa and Gallman to intimidate and falsely discredit Melvin Anderson during the Ross trial. Specifically, Scarpa argues that the Anderson evidence was improperly admitted under Rule 404(b) because it was: (1) not relevant to a material issue in dispute; (2) inadmissible for other purposes under Rule 404(b); (3) substantially more prejudicial than probative under Federal Rule of Evidence 403; and (4) highly prejudicial under a harmless-error analysis.

We disagree and conclude that the district court did not abuse its discretion in admitting the Anderson evidence. Scarpa and Gallman's efforts to

12

improperly influence Anderson's witness testimony were substantially similar to their efforts -- and could strengthen an inference of their intent -- to also improperly influence Cherry's witness testimony at the very same trial. Accordingly, the district court's finding that Scarpa and Gallman's efforts to improperly influence Anderson's witness testimony were relevant to proving Scarpa's intent to improperly influence Cherry's testimony was neither arbitrary nor irrational. Likewise, the district court did not abuse its discretion in finding that the evidence was relevant in informing the jury "of the background of the conspiracy," in "complet[ing] the story of the crimes," and "explain[ing] to the jury how the illegal relationship between the participants in the crime developed." Scarpa App'x at 72.

We also agree with the district court's Rule 403 analysis that Scarpa and Gallman's attempts to improperly intimidate and discredit a witness were not "more sensational or disturbing" than the charged crime of conspiring to bribe, and actually bribing, a witness to provide false exonerating testimony for an individual accused of committing two murders. See Lyle, 919 F.3d at 737 (internal quotation marks omitted).

Accordingly, we conclude that the district court did not abuse its discretion in admitting the Anderson evidence.

C. *Motion to Suppress Evidence Obtained from Wiretap*

For the reasons set forth in our discussion of Brettschneider's argument that the district court erred in failing to suppress the wiretap evidence, we likewise

13

conclude that the district court did not err in denying Scarpa's motion to suppress the evidence obtained from the wiretap.

*   *   *

We have considered defendants-appellants' remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

14