**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cesar Rosario ANGULOA a/k/a
Guadalupe Pedraza-Torres,
Defendant-Appellant.**

No. 78–1183.

United States Court of Appeals,
Ninth Circuit.

June 20, 1979.

Bruce A. Barton, Phoenix, Ariz., for defendant-appellant.

Michael D. Hawkins, U. S. Atty., William F. Woods, Asst. U. S. Atty., Phoenix, Ariz., on brief; Daniel R. Drake, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before CHOY and ANDERSON, Circuit Judges, and WYATT,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Cesar Rosario Anguloa (Anguloa) was convicted of possession and importation of heroin with intent to distribute. He raises two issues on appeal: (1) denial of due process because of the Government's actions in substituting interpreters, and (2) failure to establish the chain of custody to the

heroin. We find no reversible error and affirm his conviction.

## BACKGROUND

Anguloa, a Mexican national, was stopped while attempting to cross the border from Mexico to the United States at the San Luis Port of Entry. A search of his car revealed approximately 2271.7 grams of heroin hidden in the rocker panel to the car.

Difficulties developed at his trial because Anguloa neither speaks nor understands English. He was represented throughout the trial by privately retained counsel who did not speak Spanish and also by counsel from the Federal Public Defender's office who did speak Spanish. The Assistant United States Attorney (referred to as prosecutor) did not speak Spanish, but a Spanish-speaking case agent assisted him during the trial. The trial judge, a visiting judge in the District of Arizona, also did not speak Spanish.

On the first day of trial, the regular court interpreter was ill and another interpreter was designated by the clerk of the district court (referred to as interpreter # 1). Anguloa took the stand and interpreter # 1 translated the questions into Spanish and the answers into English. After the first day of trial, the prosecutor, without advising the judge or defense counsel, approached the clerk of the court and requested that interpreter # 1 be replaced. The prosecutor explained that his Spanish-speaking case agent had informed him of mistranslations by interpreter # 1. The clerk complied with the request and designated a new interpreter (referred to as interpreter # 2).

Anguloa resumed the witness stand on the second day of trial with interpreter # 2 translating. The prosecutor initiated objections to the accuracy of the translations by interpreter # 2, and defense counsel began objecting during cross-examination as well. Not only were there several objections to the accuracy of the translation, but inter-

---

* The Honorable Inzer B. Wyatt, Senior United States District Judge for the Southern District of New York, sitting by designation.

preter # 2 also made some disparaging remarks about the defendant.[1]

During the noon recess, the trial judge replaced interpreter # 2 with another interpreter, and there were no further problems with the translations. However, the jury asked to have Anguloa's testimony read back to them after they had begun their deliberations. Apparently, the jury had been confused as to where Anguloa's home town was, and then decided that they would like to hear Anguloa's entire testimony again.

## DISCUSSION

On appeal, Anguloa contends that he was denied due process because of the prosecutor's actions in substituting interpreters. He claims that this confused the translation of his testimony. Implicit in this argument is an allegation that the second interpreter was not competent. After reviewing the record, we conclude that the prosecutor's ex parte actions in substituting interpreters was improper. However, Anguloa was not prejudiced and so we conclude that it was harmless error.

A prosecutor in our criminal system occupies a unique role, a role which was best described by Justice Sutherland in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very

definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

295 U.S. at 88, 55 S.Ct. at 633.

We agree with Anguloa that the ex parte action of the prosecutor in replacing interpreter # 1 was improper. During a trial, both the opposing counsel and the judge should be informed of any difficulties which develop with the court-appointed interpreter. It is the duty of the trial judge, not the prosecutor, to appoint and replace interpreters. Fed.R.Crim.P. 28. We are aware of no cases similar to the present one, probably because attorneys never take this type of unilateral action during a trial. Nonetheless, any misconduct on the part of the prosecutor does not rise to the level where this court has previously found prosecutorial misconduct constituting a denial of due process. *See United States v. Butler,* 567 F.2d 885 (9th Cir. 1978); *Scarborough v. State of Arizona,* 531 F.2d 959 (9th Cir. 1976).

From a review of the record, it is apparent that the prosecutor did not attempt to obtain any tactical advantage by the replacement of interpreter # 1. In fact, it was the prosecutor who initiated objections to interpreter # 2. When the prosecutor asked the clerk to replace interpreter # 1, he did not attempt to have any particular

1. After one objection to the translation, the trial judge suggested that the prosecutor and the interpreter proceed "slowly and bit by bit." Interpreter # 2 responded by saying:

"It's not necessarily the questions. It's the way the defendant changes the subjects into different things at times."
Reporter's Transcript vol. III, p. 65. This comment was immediately stricken.

After another objection, Judge Hauk admonished the interpreter to give a literal translation, and interpreter # 2 replied as follows:

"He says a lot of mumbo-jumbo that doesn't mean a lot of things."
Reporter's Transcript vol. III, p. 69. This was also immediately stricken.

Additionally, defense counsel claimed that some of the jurors, as they were leaving the courtroom, may have overheard interpreter # 2 when she asked defense counsel to tell the defendant to answer the questions. Reporter's Transcript vol. III, p. 79.

interpreter appointed. The prosecutor was evidently motivated by a desire to have a more accurate interpreter, not one who would be more favorable to his case. Additionally, there was a certain amount of confusion about past court policies and procedures in regards to the hiring of interpreters. At the time of Anguloa's trial, it appears that one official Spanish court interpreter had been appointed by the District Court for the District of Arizona and that, when she was not available (as in the case at bar), the clerk called in, on a temporary basis, an interpreter from a list of interpreters maintained in the clerk's office; all interpreters were paid by the Department of Justice. Any confusion engendered by past court policies and practices in regards to the hiring of interpreters should be clarified by the new "Court Interpreters Act," Pub.L.No.95–539, 92 Stat. 2040 (1978), effective in relevant part January 26, 1979.

Although the trial judge was understandably upset with the actions taken by the prosecutor, he expressly found that interpreter # 2 was competent. The initial determination as to the competence of a translator rests with the trial judge. As the Tenth Circuit observed:

"While in the nature of things, a disinterested interpreter is essential to an impartial interpretation of a witness' testimony, at the same time the trial court is necessarily accorded a wide discretion in determining the fitness of the person called, and the exercise of that discretion will not be disturbed on review in the absence of some evidence from which prejudice can be inferred." (citations omitted)

*Lujan v. United States,* 209 F.2d 190, 192 (10th Cir. 1953); (*quoted and followed* in *Chee v. United States,*[2] 449 F.2d 747, 748 (9th Cir. 1971)). As in *Lujan, supra,* there is nothing in the record before this court from which it can be inferred that interpreter # 2 misinterpreted the defendant's testimony so as to give an erroneous meaning or impression to the jury.[3]

In each instance where there was an objection to a translation by interpreter # 2, corrections were made. Questions were either withdrawn or rephrased, and answers were clarified. The jury could not have been influenced by any mistranslations since a review of the .complete record reveals that no mistranslations were left uncorrected. When there was a problem during Anguloa's testimony about an attempted bribe, the trial judge asked questions which clarified Anguloa's answers. Also, Anguloa's examining counsel (who spoke Spanish) was able to fully develop Anguloa's version of what had occurred on direct examination. All of the other instances of mistranslation involved matters of minimal significance. *United States v. Guerra,* 334 F.2d 138, 143 (2d Cir. 1964), *cert. denied,* 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346.

The comments made by interpreter # 2 are somewhat more troublesome. *See* n. 1, *supra.* These must be viewed within the context of the trial as a whole.[4] Several objections had already been made by both the prosecutor and the defense counsel, and it appears that interpreter # 2 was merely attempting to explain her difficulties in translating. The two comments

---

**2.** *Chee, supra,* was implicitly overruled on other grounds in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

**3.** We acknowledge that there is an inherent difficulty in attempting to evaluate the accuracy of interpretations on appellate review. The reporter's transcript can only contain the questions in English and the answers after they have been translated into English. As pointed out in the legislative history to the "Court Interpreters Act," Pub.L.No. 95–539, 92 Stat. 2040 (1978):

"... 'nobody knows how accurate the interpretation may have been except the interpreter. And he is the wrong person to look to for an impartial assessment of his performance.'"
H.R.Rep.No.95–1687, 95th Cong., 2d Sess. 4, *reprinted in* [1978] 4 U.S.Code Cong. & Admin. News, pp. 4652, 4655.

**4.** This court does not review prejudicial comments in the abstract. Instead, we view them in light of the evidence as a whole. *See Carothers v. Rhay,* 594 F.2d 225, 230 (9th Cir. 1979); *United States v. Lopez,* 575 F.2d 681, 685 (9th Cir. 1978).

in open court were both stricken by the trial judge.

Additionally, the trial judge gave a cautionary instruction to the jury to alleviate any problems which may have been created by interpreter # 2.[5] The instruction given was prompt and forceful. *United States v. Wycoff,* 545 F.2d 679, 682 (9th Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556. The jury was advised as to the translator's role in court proceedings and admonished to disregard any comments which may have been made by interpreter # 2. Also, all of the jurors agreed to disregard any remarks which were made by interpreter # 2. The instruction cured any prejudice which may have resulted from the conduct of interpreter # 2.[6]

After reviewing the record in its entirety, we are convinced beyond a reasonable doubt that Anguloa was not prejudiced by the ex parte action of the prosecutor or by the mistranslations and comments made by interpreter # 2. *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The prosecutor acted in apparent good faith. There was no showing that the trial judge abused his discretion in finding interpreter # 2 competent. Prompt corrections were made after all objections to the translations by interpreter # 2. By his instruction, the trial judge neutralized any harm which may have been caused to Anguloa by the comments made by interpreter # 2.

■ The second assignment of error does not merit much discussion. Anguloa claims that the district court abused its discretion when it admitted the heroin into evidence. Anguloa does not suggest (except by totally unsupported speculation) that the evidence was tampered with or that it was not in the same condition as when it was seized. We agree with the trial judge that the Government could have done a better job of laying

---

**5.** The trial judge instructed the jury as follows:
"THE COURT: All right. Ladies and gentlemen, sorry for the delay, but an emergency involving legal matters arose and, as you know, we have a new court Interpreter. I want to instruct you as follows.
"While the Court has no personal feelings about the Interpreter, we had prior to the recess—are you interpreting for him now?—nevertheless, there seemed to be conflict among counsel, some of which you noted, and I just want to instruct you as follows. We have a new Interpreter now and, apparently, agreeable to all counsel. I want you to take this instruction very seriously I will give you now. You are not to draw any factual or legal or any kind of inference from any statements made by the previous Interpreter today, earlier in the day—I forgot her name.
"THE CLERK: Juanita Martin.
"THE COURT: With respect to the state of mind, intent or way or manner or methodology, if you will, of answering the questions if, indeed, she did make any such remarks or you think she did. Obviously, an Interpreter is not a participant in the trial. An Interpreter really only acts as a transmission belt or telephone. In one ear should come in English and out comes Spanish, but just as the transmission belt—transmission wire so that the questions can be asked in English and asked in Spanish and whatever the witness desires to say, he says that in Spanish and she translates that into English for the benefit of those of us who can not speak Spanish, but any remarks, if any she did make, with respect to the witness other than translating his answers or his statements as best she could or as best she thought she could, you must disregard entirely.
"Now I want to find out from each and every one of you if you can do that, if you can disregard it entirely, any such remarks because they have nothing to do with the issues in this case as you obviously can see. Can all of you do that? The answer is yes if I hear from nobody. You all can do it? The answer from every juror is yes.
"Is there anyone who feels you can not do that, disregard any such remarks by the prior Interpreter? The answer is no. There is nobody.
Reporter's Transcript vol. III, pp. 105–107.

**6.** The Supreme Court has relied upon cautionary instructions in determining whether prejudicial remarks by a prosecutor amounted to a denial of a defendant's due process rights. *See Singer v. United States,* 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 243, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), and *see also Donnelly v. De Christoforo,* 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (which involved a state, as opposed to federal, prosecution). This principle is equally applicable to the comments made by a court interpreter. We believe the judge's instruction was well designed to cure any prejudicial impact which otherwise may have resulted from the comments by Interpreter # 2.

the foundation; nonetheless, in the absence of some irregularity, the Government adequately showed that the heroin was the same heroin taken from Anguloa's car and that it was in substantially the same condition as at the time of seizure. *See United States v. Boyce,* 594 F.2d 1246 (9th Cir. 1979); *United States v. Godoy,* 528 F.2d 281, 283 (9th Cir. 1975).

AFFIRMED.