**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Way Quoe LONG, Defendant–
Appellant.**

**No. 98–10136.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 17, 2001.

Filed Aug. 26, 2002.

Ann McClintock, Assistant Federal Defender, Sacramento, CA, for the defendant-appellant.

Kathleen A. Servatius, Assistant U.S. Attorney, Fresno, CA, for the plaintiff-appellee.

Before: RONEY,* HUG and THOMAS, Circuit Judges.

PER CURIAM Opinion; Dissent by Judge THOMAS.

PER CURIAM:

This case involves growing marijuana, conspiracy, and firearms. Appellant Way Quoe Long (Long) was convicted of engaging in a continuing criminal enterprise (CCE), 21 U.S.C. § 848 (count 1); conspiracy to manufacture, distribute, and to possess with the intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 846 (count 2); two counts of manufacture of marijuana and aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (counts 3 and 5); using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1) (count 6); possessing a firearm silencer, 26 U.S.C. § 5842, 5861(i), 5871 (count 7); two counts of possessing a machine gun, 18 U.S.C. § 922(o) (counts 8 and 9); and four counts of criminal forfeiture, 21 U.S.C. § 853 (counts 11–14). Long was acquitted of a manufacturing charge (count 4) and one piece of real property was found not to be forfeitable (count 10). Long appeals. We affirm.

Long presents ten issues on appeal: (1) whether Long had standing to challenge the evidence seized from 3515 East Clay Avenue, Fresno, California ("East Clay"); (2) whether the evidence seized from 29211 Bonneyview Lane, Toll-house, California ("Bonneyview") should be suppressed; (3) whether alleged juror misconduct is sufficient for reversal and whether Long know-

ingly and voluntarily waived his presence at the *in camera* hearings regarding juror misconduct; (4) whether the district court improperly polled the jurors and gave an inaccurate *Pinkerton* instruction (*Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)) (judicially created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy), which failed to limit *Pinkerton* liability for the actions of one's co-conspirators to reasonably foreseeable substantive crimes in furtherance of the conspiracy; (5) whether the testimony of government witness Khamsouk Vongprachanh should be excluded because of alleged inaccuracies by the court interpreter; (6) whether there was sufficient evidence to support the use or carry firearm conviction; (7) whether there was sufficient evidence to support the CCE conviction and whether the district court erroneously instructed the jury on the CCE charge; (8) whether the trial judge's absence during the announcement of the jury's impasse constituted an improper convening of court which created a fatal structural defect; and (9) whether Long may be convicted and punished for both conducting a continuing criminal enterprise and conspiracy (lesser-included offense).

### 1. Long's Standing—East Clay.

Fresno Police Department officers served a search warrant at the East Clay residence. They seized marijuana plants, an Uzi submachine gun, and a loaded shotgun. The police also discovered fertilizer, irrigation equipment, heat lamps, and gardening tools. The search warrant was

---

* The Honorable Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit, sitting by des-

ignation.

based upon the sworn affidavit of a Fresno Police Department detective, who in turn relied upon the observations of an animal control officer with no documented expertise in marijuana identification.

Long filed a motion to suppress, arguing that (1) the search warrant failed to establish probable cause; (2) he had a legitimate expectation of privacy in East Clay; and (3) the government is estopped from arguing that he did not because it stated during a bail hearing that Long resided at East Clay. The government responded that Long failed to establish a legitimate expectation of privacy in East Clay. The district court found that although there were indicia of Long's residing at East Clay, such as photographs of the defendant with his family and male clothing that may have been his, these indicia did not establish Long's privacy interest in East Clay.

■ The district court did not err in finding that Long failed to present sufficient evidence to establish either his residency or reasonable expectation of privacy in East Clay. Two previous cases of this Court have held that miscellaneous indications that a defendant had been in a residence are insufficient to establish a legitimate expectation of privacy and thus standing to challenge the search. *See United States v. Sarkisian,* 197 F.3d 966, 987 (9th Cir.1999) (holding that defendants who failed to claim interest in items seized from search of a rented storage room, and who merely possess the authority to access the room but do not use it, without more, lack Fourth Amendment standing to challenge an unlawful search of that area); *United States v. Armenta,* 69 F.3d 304, 308–09 (9th Cir.1995) (holding that defendant's personal items and sworn declaration, and police officer's testimony that the defendant had stayed in a house the night before are insufficient to establish defendant's expectation of privacy). Photo-

graphs and clothing alone are inconclusive, especially because the clothing was not labeled and could have belonged to any man.

■ While the government argued during a bail hearing that Long resided at East Clay, and the government may not take contradictory positions in order to defeat an asserted expectation of privacy, *United States v. Bagley,* 772 F.2d 482, 489 (9th Cir.1985), Long still had to factually establish standing, which he did not. Long is not "entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." *United States v. Zermeno,* 66 F.3d 1058, 1062 (9th Cir.1995) (citing *United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir.1993)).

### 2. Bonneyview.

■ The first search warrant was based on a tip that marijuana was cultivated at Bonneyview, which a police helicopter team confirmed. The helicopter team subsequently realized that they mistakenly identified the marijuana and tried to stop the ground team from executing the search warrant. The ground team did not hear the order to stop due to communications problems. The ground team entered the residence and, while securing the premises, found firearms and two marijuana plants outside the front door. The police asked for and received a second search warrant for Bonneyview. Long claims that the officers were dishonest or misleading in their affidavits to support the warrants, thus negating probable cause.

The district court conducted a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (hearing held at the defendant's request if he makes a substantial preliminary showing that a search warrant affiant knowing-

ly and intentionally, or with reckless disregard for the truth, included a false statement in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause). Although the district court found some problems with the conduct of the police, the court denied Long's motion to suppress because the court found that the two marijuana plants were in plain view and that the second search warrant was untainted by the mistaken observations of the helicopter team.

The district court did not err because (1) probable cause was still established when the affidavit supporting the first warrant is properly purged of intentionally or recklessly false statements, *United States v. Garza*, 980 F.2d 546, 551 (9th Cir.1992); (2) the police made their mistakes in good faith and they attempted to correct them by contacting the magistrate judge by telephone; (3) the two marijuana plants were potted and in plain view. *United States v. Garcia*, 997 F.2d 1273, 1279 (9th Cir.1993).

### 3. Juror Misconduct and Waiver of Right to be Present at Juror Misconduct Hearings.

Two jurors, Juror Harris and Juror Miller, accused each other of misconduct consisting of, *inter alia*, discussing the case extensively with family members and making up their minds with respect to the defendant's guilt or innocence before the end of deliberations. The district court conducted an *in camera* interview with one of the jurors and informed the parties of the results. The district court also questioned both jurors in chambers with the attorneys present, but not Long. Defense counsel eventually requested that both jurors remain on the jury because of defense counsel's concerns with the alternate jurors, stating that she had no reservations about the two jurors, and that "this is not the kind of situation where jurors should be removed, that the Court has exhausted the correct procedure, that the Court has made a fair and impartial decision, and it is the position of the defense to proceed." Trial Tr. at 3123.

■■■ There is some question about the correct standard of review. Generally, a trial court's decision regarding jury incidents is reviewed for abuse of discretion. *United States v. Beard*, 161 F.3d 1190, 1193 (9th Cir.1998); *United States v. Olano*, 62 F.3d 1180, 1192 (9th Cir.1995). The trial court's decision not to excuse a juror is also reviewed for an abuse of discretion. *United States v. Miguel*, 111 F.3d 666, 673 (9th Cir.1997); *United States v. Alexander*, 48 F.3d 1477, 1484–85 (9th Cir.1995). The presence of a biased juror, however, cannot be harmless. The error requires a new trial without the showing of prejudice. *Dyer v. Calderon*, 151 F.3d 970, 973 n. 2 (9th Cir.1998) (*en banc*). The district court's factual findings relating to the issue of juror misconduct are reviewed for clear error. *United States v. Matta–Ballesteros*, 71 F.3d 754, 766 (9th Cir.1995).

Long urges this Court to apply a *de novo* standard because the district court failed to fully resolve the facts. In other words, Long argues that this Court should give the district court no deference because it did not decide which juror was telling the truth.

We review for abuse of discretion because the district court has the discretion to determine whether jurors are telling the truth, whether they can proceed fairly, and whether they should be excused or replaced. So long as the district court believes that jurors are able to proceed fairly, it does not have to publish particularized findings of fact.

■■■ The district court did not abuse its discretion. First, the district court carefully interviewed both jurors separately, both outside and in the presence of coun-

sel. Second, the district court focused on whether the jurors had kept open minds, whether they could deliberate with each other, and whether the alleged misconduct would affect their deliberations with the other ten jurors. The district court ruled that it

cannot find that these jurors have either expressed such a bias or have such closed minds that they would not be able to fairly and honestly deliberate .... [t]he two jurors will be able to deliberate with ten other persons as a jury of 12 persons, and, therefore, I'm going to determine that I will not remove these jurors for cause and we will proceed with the arguments.

As to whether Long waived his right to be present at the interviews, the relevant portion of the transcript is as follows:

THE COURT: All right. As to the interviews, Mr. Long has the right to be present, Ms. Kallins. And so, Mr. Long, your attorney has suggested that you not be present. You have the right to be present. What is your wish?

THE DEFENDANT: Can we go on with the jury that's here, forget about everything and keep going?

(Counsel conferred with her client off the record.)

THE DEFENDANT: Yeah, yes.

THE COURT: All right, Mr. Long agrees that Ms. Kallins can represent him in the interviews with the jurors. Then let's retire directly to chambers and we will conduct the further interviews of these two jurors.

Trial Tr. at 3093.

 This colloquy shows that Long waived his right to be present at the *in camera* conference and that he allowed his attorney, Ms. Kallins, to represent him and his interests. The Supreme Court does not require a district court to get an on-the-record waiver from the defendant for every trial conference which he or she might have a right to attend. *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). The Supreme Court stated the rule as follows:

The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, e.g., *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him. In *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the Court explained that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.,* at 105–106, 108; *see also Faretta v. California,* 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court also cautioned in *Snyder* that the exclusion of a defendant from a trial proceeding should be considered in light of the whole record. 291 U.S. at 115. In this case the presence of the four respondents and their four trial counsel at the *in camera* discussion was not required to ensure fundamental fairness or a "reasonably substantial ... opportunity to defend against the charge." *See Snyder, supra.* The Fifth Amendment does not require that all the parties be present when the judge inquires into such a minor occurrence.

470 U.S. at 526–27.

This reasoning is supported by Fed. R.Crim.P. Rule 43(b), Continued Presence Not Required, which states that

The further progress of the trial to and including the return of the verdict, and the imposition of sentence, will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial, or having pleaded guilty or *nolo contendere,* (1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial), (2) in a non-capital case, is voluntarily absent at the imposition of sentence, or (3) after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

As the Sixth Circuit noted in *United States v. Brown,* 571 F.2d 980, 987 (6th Cir.1978), "[a]n in-chambers conference concerning the dismissal of a juror, while a stage of the trial within the meaning of Rule 43(a) and not excluded by Rule 43(b) or (c), is not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present (citations omitted)."

Thus, the district court did not err in allowing Long's counsel to represent Long at the *in camera* hearing regarding alleged juror misconduct.

Long contends that he was tried by a jury that was not impartial because Juror Harris and Juror Miller were allowed to stay on the jury. However, not only did the district court find that the jury was able to proceed impartially, but both Long himself and his defense counsel requested that they stay on the jury.

### 4. Improper Jury Polling and Inaccurate Pinkerton Instruction.

Long contends that the district court erred by engaging the jurors in dialogue over the correctness of the verdict, thus relieving the jurors of feeling fully responsible for their decision. As a part of this argument, Long contends that the district court never gave an accurate explanation of a co-conspirator's *Pinkerton* liability. He argues that Jury Instruction 26, "Conspiracy—*Pinkerton* Charge," failed to properly limit *Pinkerton* liability for the actions of one's co-conspirators to reasonably foreseeable substantive crimes in furtherance of the conspiracy.

■ The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

When the jury returned a verdict, Long asked for the jury to be polled. During polling, the following colloquy occurred:

THE COURT: Mr. Wood, are each of the verdicts just read, including the change to Count 6, your true verdicts?

JUROR NO. 7: Yes, but I have to clarify something. If a conspiracy means whatever anybody did, he did, then yes. Whatever anybody in the conspiracy did, what anybody in that little group did. I'm sorry I'm doing this, but I have to be sure for myself.

THE COURT: Yes. You have that right.

JUROR NO. 7: If everybody, in that group, whatever anybody in that group did, he's guilty of, if we found him guilty of conspiracy, then yes.

THE COURT: Well, did you find the defendant guilty of conspiracy?

JUROR NO. 7: Yes.

THE COURT: All right. Then the law does provide that if you found it to be

the same conspiracy, that the acts committed by others who you found to be members of the conspiracy beyond a reasonable doubt were committed in the furtherance of that conspiracy, then all the people you have found to be conspirators are liable for all the crimes you found to be committed.

JUROR NO. 7: Yes.

THE COURT: All right. Mr. Derfelt, are each of the verdicts just read, including the correction to question number 6,—Count 6, your true verdicts?

JUROR NO. 8: Yes, with the same explanation under the conspiracy.

Trial Tr. at 3380–3381.

Defense counsel requested that the district court vacate the verdict and send the jury back to re-deliberate or declare a mistrial. The district court denied both. The district court confirmed with Jurors 7 and 8 that their guilty verdicts were true, and that the jurors were speaking freely and voluntarily without feeling pressured. The district court then sent all the jurors back to the jury room to see if there were any further questions and whether they needed any further instructions as to the existing counts. When the jury came back, the court polled the jury once again and scheduled another day to reconvene.

■■■■ The district court did not err with its polling procedures and appropriately dealt with the questions of Jurors 7 and 8. The district court took great pains to make sure that the jurors' verdicts were true and that they did not feel pressured by the district court or anyone else.

■■■■■ With respect to the *Pinkerton* jury instruction and reasonable foreseeability, usually we review a district court's formulation of jury instructions for abuse of discretion. *United States v. Service Deli, Inc.*, 151 F.3d 938, 942 (9th Cir.1998). Because Long's defense counsel failed to object at trial, however, we review for

plain error. *United States v. Morfin,* 151 F.3d 1149, 1151 (9th Cir.1998).

■■■■ The actual instruction read as follows:

Each member of a conspiracy is responsible for the actions of other members performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members must have also under the law committed the crime. Therefore, you may find the defendant guilty of the crimes of manufacturing marijuana, using and carrying a firearm in relation to a drug trafficking offense, possession of an unserialized firearms silencer or possession of a machine gun, as charged in Counts 3 through 9 of the indictment if the government has proved each of the following elements beyond a reasonable doubt as to each count:

First, a member of the conspiracy committed the crime charged in that count of the indictment; Second, the person was a member of the conspiracy charged in Count 2 of the indictment; Third, the person committed that crime in furtherance of the conspiracy; and Fourth, the defendant was a member of the same conspiracy at the time the offense charged in that count was committed.

Under the plain error standard of review, we may not review even a clearly erroneous instruction if the defendant cannot show that the error affected substantial rights or caused prejudice to his case. *United States v. Perez,* 116 F.3d 840, 847 (9th Cir.1997) (en banc). Under similar circumstances, we have held that the giving of such an instruction does not constitute plain error. *See United States v. Bowman,* 215 F.3d 951, 969 (9th Cir.2000); *United States v. Montgomery,* 150 F.3d 983, 997 (9th Cir.1998).

### 5. Alleged Inaccuracies by Court Interpreter.

█ Long claims that the court interpreter committed numerous inaccuracies in translating the testimony of government witness Khamsouk Vongprachanh such that his due process rights were violated, and that the district court erroneously denied Long's motion for a mistrial. The translator, who claimed to be skilled in both Hmong and Lao, apparently used both languages during the translation. Long claims that the translator's Lao skills were inadequate to interpret all that the witness said. Long also claims that his Sixth Amendment Confrontation Clause rights were violated because the inadequacies of the interpreter defeated his efforts to confront the witness during cross-examination.

█ The district court expressed concern over the "suggestion that the interpreter has not interpreted all that the witness said, and that is something that he [the interpreter] himself has testified." Trial Tr. at 1846. While the district court judge was "thinking about changing the interpreter," Trial Tr. at 1852, he also stated that he did not

> "believe that there has been the misinterpretation; rather, what I believe is that the interpreter, in effect, did not interpret and translate into English certain statements that he's acknowledged that the witness made that I didn't hear interpreted ... so apparently everything that the witness said was not interpreted. Further, [defense counsel] if she wishes, can call the witness back in her case with an independent interpreter, a separate interpreter and ask him any questions that she feels are appropriate." Trial Tr. at 1853.

The district court did not abuse its discretion in denying a mistrial. First, neither the district court nor the lawyers were fluent in either Hmong or Lao. There is no way to know what really happened between the witness and the interpreter, nor determine the adequacy of the translation. While the general standard for interpreters requires continuous word-for-word translation, occasional lapses in the standard will not necessarily contravene a defendant's constitutional rights. *United States v. Lim*, 794 F.2d 469, 470–71 (9th Cir.1986). The trial record shows that the district court tried to see that Long received adequate translation.

█ Second, Long has not demonstrated the nature of any exculpatory evidence which the witness possessed and could not communicate to the court due to the translator. We generally view interpreter problems within the context of an entire trial, *United States v. Anguloa*, 598 F.2d 1182, 1185 (9th Cir.1979), and the government had other evidence and witnesses besides Khamsouk Vongprachanh to support its case against Long.

### 6. Whether There Was Sufficient Evidence to Support the Use or Carry Firearm Conviction.

Long claims that there was insufficient evidence to support his jury conviction for using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1). The two firearms in question are a Stoner SR–25 rifle and a silenced RPB Industries copy of the MAC–10 sub-machine gun.

The police found these two guns in a shack which overlooked a large marijuana crop. The shack had a type of elevated perch which provided a good spot to watch over the marijuana crop. Receipts and testimony from one of Long's partners, Noumane Sayavong, show that Long owned the two guns. Long does not appear to contest these facts. Sayavong also testified that the shack was used only as a guard shack, and that Long told him that Long brought the rifle and the silenced

submachine gun to the shack for the purpose of protecting the marijuana crop from potential thieves.

We note that the language of 18 U.S.C. § 924(c)(1) says "uses or carries" but the language of the superseding indictment says "use and carry." However, "[w]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (citations omitted). *See also United States v. Simpson*, 228 F.3d 1294, 1299 (11th Cir.2000) (holding that, for purposes of 18 U.S.C. § 924(c)(1), "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means ....").

Although the government's evidence with respect to "use" may not satisfy the legal standard as set forth in *United States v. Guess*, 203 F.3d 1143, 1146–47 (9th Cir.2000) and *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472. 143–50 (1995), the evidence meets the legal standard with respect to "carry" as set forth in *Muscarello v. United States*, 524 U.S. 125, 126–32, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). In *Muscarello*, the U.S. Supreme Court broadly ruled that "carry" was not limited to the carrying of firearms on the person, and held that an individual who knowingly possesses a firearm in the locked glove compartment or trunk of his car "carries" the firearm for the purposes of 18 U.S.C. § 924(c)(1). 524 U.S. at 127–28. The *Muscarello* court defined the phrase "carry arms or weapons" as "to wear, bear, or carry them upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person." *Id.* at 130 (citation omitted).

The jury had sufficient evidence to decide that Long carried the Stoner SR–25 rifle and the silenced RPB Industries copy of the MAC–10 submachine gun to the guard shack in order to protect his marijuana crop, and thus be "armed and ready for offensive or defensive action in case of a conflict with another person," satisfying 18 U.S.C. § 924(c)(1) and *Muscarello*. Sayavong's testimony was sufficient, if believed, to support a jury verdict that Long had carried the guns to the scene of the crime, the marijuana fields. While Long did engage in target practice with the two firearms in question, the record indicates that the purpose of the target practice was to sight in the weapons such that the shooter could hit anyone who tried to steal from or otherwise harm Long's marijuana crop.

We note that although Long initially argued that the jury was erroneously instructed on the elements of 18 U.S.C. § 924(c) relative to a machine gun, he has correctly conceded in his reply brief that any error would be "harmless as the jury necessarily found the weapon at issue was a machine gun in light of its verdict on count eight." Therefore we do not address this particular issue.

**7. Whether There Was Sufficient Evidence to Support the CCE Conviction, and the Allegedly Inaccurate CCE Instruction.**

Long claims that there was insufficient evidence to support the continuing criminal enterprise (CCE) conviction because (1) Vongprachanh's testimony should not be considered due to problems with the interpreter, (2) Sayavong's testimony does not show that Long organized, supervised, or managed five or more people as CCE requires, and (3) the jury's finding on CCE was based upon only two marijuana counts

(East Clay and another residence not challenged here, McKinley/Monroe), and a conspiracy count, and therefore the jury did not find the requisite series of three or more narcotics offenses. Long also claims that the district court committed plain error when it failed to instruct the jury that a Title 21 conspiracy cannot serve as a predicate felony satisfying the "continuing series" requirement of 21 U.S.C. § 848(c)(2).

■■■ The evidence was sufficient to support Long's CCE conviction. First, we have already determined that Vongprachanh's testimony was correctly considered. Second, the record clearly demonstrates that Long was responsible in some managerial or organizational capacity for the marijuana growing which involved five or more persons. That is sufficient to satisfy the broad "organizer, a supervisory position, or any other position of management" language of 21 U.S.C. § 848(c)(2)(A). *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1570–71 (9th Cir.1989). Furthermore, we held in *Hernandez–Escarsega* that it is proper to rely on Title 21 conspiracies to establish CCE violations. Therefore, the conspiracy plus the two marijuana counts comprise the three substantive counts, and the district court's jury instruction on the "continuing series" requirement of 21 U.S.C. § 848(c)(2) was not erroneous.

## 8. Judge's Absence.

■■■ Long claims that the district court's law clerk announced the jury's impasse when neither Long nor the trial judge were present, which improperly convened court and created a structural defect requiring all of the forfeiture verdicts to be vacated. Long points us to *Sanders v. Union Pac. R.R.*, 193 F.3d 1080, 1082 (9th Cir.1999) (Tashima, J., concurring). *See also Riley v. Deeds*, 56 F.3d 1117, 1122 (9th Cir.1995) (holding that it was constitu-

tional error requiring reversal when, among other things, the law clerk convened court by directing court reporter to read back testimony to jury in absence of judge).

■■■ The record before us does not show that the law clerk actually "convened" court in Judge Wanger's absence. Judge Wanger informed the parties that he had to leave the court-house but had arranged for Judge Coyle to preside over the jury's deliberations. The defense timely objected. Outside the presence of the jury, the law clerk informed the parties that Judge Coyle was still home due to a misunderstanding. The jury had a question for the court, and the law clerk asked defense counsel if she wanted Judge Wanger or Judge Coyle to come in. Defense counsel stated that she did not want a mistrial, and asked for Judge Coyle to come in and give an *Allen* charge. An *Allen* charge is a supplemental jury instruction that a trial judge may give when a jury announces that it is unable to agree on a verdict. Without being coercive, the *Allen* charge urges jurors to keep trying to reach a verdict, and is designed to assist them in finding common ground by reminding them of their duties as jurors, encouraging them to give due deference to arguments of fellow jurors, and to reexamine their own views without abandoning their deeply felt beliefs. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *See also United States v. Hernandez*, 105 F.3d 1330 (9th Cir.1997).

The law clerk then read the jury's question into the record. The law clerk then discussed which version of the *Allen* charge the parties wanted. Judge Coyle then arrived.

Unlike the cases Long cites, the law clerk in this case did not actually "convene" court as to create reversible constitutional error. Instead, the law clerk merely facilitated communication between

the parties until Judge Coyle arrived. Furthermore, it is clear from the transcript that the law clerk's conversation with the lawyers was all outside the presence of the jury.

**9. Whether Long May Be Convicted and Punished for Both Conducting a Continuing Criminal Enterprise and Conspiracy (Lesser–Included Offense).**

▮▮ Long contends that given his conviction on count one for conducting a continuing criminal enterprise (21 U.S.C. § 848), his conviction on count two for conspiracy to manufacture and distribute marijuana under 21 U.S.C. §§ 841(a)(1) and 848 violated double jeopardy. The government correctly concedes this point and agrees with Long. Because we affirm Long's CCE conviction, we accordingly strike the conspiracy conviction and the attendant $50 penalty assessment from the judgment. *See United States v. Medina,* 940 F.2d 1247, 1253 (9th Cir.1991) and *Rutledge v. United States,* 517 U.S. 292, 307, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

AFFIRMED as MODIFIED.

THOMAS, Circuit Judge, dissenting.

I respectfully dissent from the holding that Long lacked standing to challenge the search at the East Clay property. The dispositive question is whether Long is entitled to rely upon evidence presented by the government to establish standing.

Prosecutors do not have unbounded authority to "charge possession but dispute expectation of privacy regardless of the underlying facts." *United States v. Issacs,* 708 F.2d 1365, 1367 (9th Cir.1983). Here, the government presented contradictory theories as to whether Long resided at the East Clay property—arguing at the bail hearing that he did, but contending at the suppression hearing that he did not.

Of course, Long cannot rely solely upon the arguments or theories advanced by the government to support an expectation of privacy. *See United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir.1993). Nor can he rely upon "the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." *United States v. Zermeno,* 66 F.3d 1058,1062 (9th Cir.1995). Instead, it is Long's obligation to "present evidence of his standing, or at least to point to specific evidence in the record which the government presented and which established his standing." *Id.*

*Zermeno* supports the position that Long, although constrained from relying on the government's argument, is entitled to "point to specific evidence in the record which the government presented." Here, the government presented evidence that Long and his girlfriend, Khong Donangboupha, were cultivating, manufacturing and distributing marijuana at the Clay Street property at the time the Clay Street warrant was executed. An affidavit presented by the government indicated that officers had spoken with the family of Long's girlfriend and had been told that she was living at the Clay Street residence with her boyfriend and two children in May 1994, when the property was searched. Items seized during the Clay Street search included a picture I.D. for the girlfriend; receipts in the name of Sean Vong (an alias for Long); some of Long's clothing; and photos of Long with his girlfriend and two children. Long is entitled to rely upon this evidence in support of his claim of standing. If this evidence were considered, it would be sufficient to establish his standing to contest the search.

The government investigated, charged, tried, convicted, and sentenced Long on the theory that he resided at the East Clay property, cultivated marijuana at that

address, and possessed illegal weapons at that address. Based on the evidence that the government tendered in support of its theory, I would hold that Long has standing to challenge the search at the East Clay property.