# Illinois Official Reports

## Appellate Court

***People v. Clayton*, 2019 IL App (3d) 170315**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MONROE P. CLAYTON, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0315 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | November 22, 2019<br><br>December 18, 2019<br>December 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 17-CF-17; the Hon. Clark E. Erickson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices O'Brien and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Monroe P. Clayton, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) and was sentenced to life imprisonment. On appeal, he argues that (1) his right to a unanimous jury verdict was violated when the circuit court dismissed a juror who had revealed his position on the merits of the State's evidence and (2) his right to be present at a critical stage of his trial was violated when his presence at the inquiries into an alternate juror and a sitting juror was waived by defense counsel. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3     On January 20, 2017, the State charged Clayton with two counts of first degree murder (*id.* § 9-1(a)(1), (2)) based on the stabbing death of 83-year-old Zennia Young.

¶ 4     A jury trial was held over several days in April 2017. The State presented nine witnesses over the first three days of trial. Prior to the start of proceedings on the fourth day of trial, the first alternate juror approached the bailiff regarding an issue she had with another juror. She was taken into Judge Erickson's chambers with the attorneys and a court reporter. Once there, Judge Erickson stated that the defendant's presence had been waived; there is no indication from the record that this waiver had taken place in court and in Clayton's presence. The alternate juror stated that one of the seated jurors, Porto, "usually sleeps through most of the testimony" and that he had not taken any notes. After the alternate juror left his chambers, Judge Erickson recounted his own observation that during opening arguments, Porto "was leaning back, had his arms folded over his chest and head down." The judge suggested Porto be interviewed, but the prosecutor questioned whether bringing Porto in immediately after the alternate juror would reveal who was "ratting him out" and cause him to be upset with the alternate juror. Judge Erickson instead told the attorneys to watch Porto intermittently during the afternoon session.

¶ 5     The trial resumed, and the State presented the live testimony of five more witnesses and a sixth by stipulation. After that testimony concluded, the courtroom was cleared, and Judge Erickson called the attorneys back into his chambers. While in court with Clayton present, defense counsel waived his client's presence for the discussion. Judge Erickson stated that Porto appeared attentive during the deoxyribonucleic acid (DNA) expert's testimony, but for "50 to 65 percent of the time before that, whenever I glanced over, his eyes were closed, his arms were folded, his head was *** down to varying degrees." The prosecutor stated that at several points during the session, he saw Porto's "chin slump down toward his chest. I saw his chest rising and falling in slow, regular breathing patterns that indicated to me that he was sleeping." The prosecutor further opined that Porto "was sleeping for significant portions of the early afternoon," although he "seemed to perk up a good deal" after one of the recesses. Next, the prosecutor added:

      "I also couldn't help but *** notice during others' examinations today, I mean, he—except for the DNA person, he rarely even looks at the witnesses. I mean, he's

pretty much—you know, the head's slumped and looking straight forward. His eyes aren't even directed at the witness stand for the *** vast majority of the time that he's sitting there."

Judge Erickson responded:

"I wonder if he's—well, I noticed that when the *** photographs were being passed around—I mean, again, my attention was drawn to him during opening statements—but I'm not sure he looked at any of the photographs. If he did, it was a *** glance out of the corner of his eye. I mean, he simply accepted a photograph and passed it on immediately, every single photograph."

Next, Judge Erickson considered whether there were sufficient grounds to dismiss Porto and noted that he believed the State was leaning toward dismissal. The prosecutor said "[t]hat would be the—" and was interrupted by Judge Erickson before he could finish his sentence. At that point, defense counsel objected to the dismissal, and Judge Erickson stated he would question Porto the following day.

¶ 6        Before the trial resumed on the fifth day, Judge Erickson went into his chambers with the attorneys; again in chambers and without Clayton's presence, defense counsel waived his client's presence. Porto was brought in and, in response to questioning, stated that whenever he sits down, he gets sleepy. If he sits down at work over lunch, he will fall asleep. When asked how many times he had fallen asleep during the trial, Porto stated, "I don't know if I really fell asleep or just, like, I've got my eyes closed. I don't know if I'm actually sleeping." He admitted that he could have been sleeping, but he claimed that he would only fall asleep for seconds at a time. He stated that as far as he knew, he did not have a sleep disorder.

¶ 7        Porto admitted that he had his eyes closed for most of the trial, but he attributed that in part to the bright light coming through the window near him. Upon further questioning, he admitted that he may have fallen asleep once or twice for a couple of seconds. He did not believe he missed any evidence, adding that he felt it "seemed very repetitious." After Judge Erickson asked him again if he thought he had missed any evidence, Porto stated he did not think so:

"At least the way I'm listening to the case. I *** don't really think there was much evidence except for the one part with the DNA. Most of the rest of the stuff didn't really seem like evidence to me."

¶ 8        Judge Erickson continued to ask questions regarding Porto's tendency to fall asleep while sitting. During that exchange, Porto opined that he fell asleep once or twice each day, and possibly more, during the trial.

¶ 9        After the questioning ended and Porto was escorted out of Judge Erickson's chambers, the prosecutor immediately moved to dismiss him for cause. Defense counsel objected, and Judge Erickson took the matter under advisement, instructing the attorneys to provide case law on the matter.

¶ 10       The trial resumed and the State presented the testimony of three more witnesses, one of which through stipulation, before it rested. The defense called one witness before resting. The State presented one witness in rebuttal, and the jury instruction conference was started and carried over into a second day.

¶ 11       Upon finishing with jury instructions, defense counsel moved for a directed finding, which the court denied. Next, Judge Erickson addressed the State's motion to dismiss Porto for cause, discussing the matter at length and noting, *inter alia*, that (1) Porto appeared to be resting or

sleeping at times during the trial, (2) when photographic exhibits were shown to the jury, it appeared he did not even look at them before passing them on, with the possible exception of one, and (3) comments made by at least two other jurors indicated that they were aware of him either resting or sleeping during the trial. Further, Judge Erickson stated that he did not believe Porto's claim that he may have fallen asleep only once or twice for a few seconds each day. Accordingly, Judge Erickson found "that this juror is inattentive and it would be a violation of due process for us to keep him on the jury. I'm going to excuse him for cause."

¶ 12    Porto was replaced by the alternate juror who originally reported his inattention, and the attorneys presented their closing arguments. The jury found Clayton guilty of first degree murder, and he was later sentenced to life imprisonment. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    Clayton's first argument on appeal is that his right to a unanimous jury verdict was violated when the circuit court excused a juror who had revealed a position favorable to him on the merits of the State's evidence.

¶ 15    Initially, we note that the parties dispute the appropriate standard of review. The State asserts that abuse of discretion is the appropriate standard. While Clayton acknowledges that the replacement of a juror is a matter within the circuit court's discretion, he claims that *de novo* review is appropriate in this case. We disagree.

¶ 16    Clayton's attempt to secure *de novo* review is based on *People v. Gallano*, 354 Ill. App. 3d 941 (2004). In *Gallano*, after deliberations had begun, a juror sent a note to the court, stating that stated he was the lone holdout from a unanimous guilty verdict. *Id.* at 949. After the State learned of the note, it began running a background check on the juror based on alleged suspicions it had regarding the juror's truthfulness during *voir dire*. *Id.* at 950. That research confirmed that the juror had lied about his criminal history, so the State moved to excuse him. *Id.* The court reopened *voir dire* of the juror and excused him. *Id.* at 951. On appeal, the *Gallano* court phrased the defendant's argument as follows:

> "Defendant argues that the discharge of juror Litke after it was known that he was the lone holdout juror violated defendant's right to a unanimous verdict because the dismissal allowed the State to obtain a conviction despite its failure to persuade all of the jurors that defendant violated the law." *Id.* at 953.

The *Gallano* court then stated, "[w]e review claims of manifest constitutional error *de novo*." *Id.* (citing *People v. Burns*, 209 Ill. 2d 551, 560 (2004), which addressed the issue of whether due process entitles a sexually dangerous person seeking discharge under section 9 of the Sexually Dangerous Persons Act to an independent psychiatric expert at the State's expense).

¶ 17    There are two reasons why we find *Gallano* inapplicable to this case. First, *Gallano* is factually distinguishable. In that case, the proofs had been closed and the jury was well into deliberations before the juror in question advised the court that he could not find guilt. *Id.* at 949. Here, Porto was questioned during the presentation of evidence and before deliberations had begun. Further, *Gallano* did not involve a question of juror inattentiveness; there was no question of whether the juror in that case heard all the evidence. In this case, Porto's attentiveness throughout the presentation of evidence was the sole question.

¶ 18    Second, even if *Gallano* is on-point, our supreme court called *Gallano*'s choice of standards of review into doubt in *People v. Nelson*, 235 Ill. 2d 386 (2009). In *Nelson*, the court

was faced with a question of whether it was error for the circuit court to remove a juror during the sentencing phase of a capital case. *Id.* at 444. Nelson cited *Gallano*, arguing that *de novo* review was appropriate "because the trial court's decision to discharge Juror 20 implicated defendant's due process right to a unanimous jury." *Id.* at 445. The *Nelson* court rejected that argument, however, emphasizing that "matters relating to jury selection and management are within the discretion of the trial court." *Id.* at 446. We are cognizant that the *Nelson* court ultimately applied a standard of review somewhat more deferential than pure abuse of discretion because *Nelson* was a capital case. *Id.* at 446-47. However, the important aspect of *Nelson* for our purposes is that it held that *de novo* review does not apply in typical juror management cases. We therefore reject Clayton's attempt to secure *de novo* review in this case.

¶ 19 This case is not about whether Clayton was denied a unanimous jury verdict. It is about whether the circuit court's decision to excuse Porto for inattentiveness constituted an abuse of the court's jury-management discretion. See *id.* at 446.

¶ 20 When a question arises regarding juror inattentiveness, Illinois courts have held that the circuit court has a *sua sponte* duty to reopen *voir dire* to preserve the defendant's right to a fair trial. *People v. Jones*, 369 Ill. App. 3d 452, 456 (2006); see also *People v. Gonzalez*, 388 Ill. App. 3d 566, 576-77 (2008). The circuit court in this case fulfilled its duty under *Jones* and *Gonzalez*. In addition, we find no abuse of discretion in the court's decision to excuse juror Porto, even though it came after he revealed his dismissive view of the evidence presented up to that point, and even though it appears that the better practice would have been to question, and, if warranted, excuse Porto and substitute one of the alternates earlier in the process. Porto's inattentiveness had been observed by the judge during opening statements, and Porto's assessment of the evidence up to the point when the court reopened *voir dire* was reasonably attributable to his sleepiness throughout the proceedings. Judge Erickson thoroughly questioned Porto and ultimately determined that he was not truthful in his assessment of whether and for how long he had fallen asleep at various times during trial. Under these circumstances, we hold that it was not an abuse of discretion to excuse Porto. See *Jones*, 369 Ill. App. 3d at 455 (noting that "a juror who is inattentive for a substantial portion of a trial has been found to be unqualified to serve on the jury").

¶ 21 Clayton's second argument on appeal is that his right to be present at a critical stage of his trial was violated when his presence at the inquiries into an alternate juror and a sitting juror was waived by defense counsel. As previously noted, defense counsel waived Clayton's right to be present at the *in camera voir dire* in chambers and outside of his presence, so there was no voluntary relinquishment. Clayton does not challenge his absence at the general discussion for which his presence was waived by counsel in open court and in his presence.

¶ 22 Clayton acknowledges that he has forfeited his second argument for appellate review. However, he requests that we review the issue under the plain-error doctrine.

¶ 23 The plain error doctrine allows a reviewing court to consider a forfeited issue if error in fact occurred and either (1) the evidence was closely balanced such that the error improperly tipped the scales of justice or (2) the error was so serious that it affected the fairness of the trial or impugned the integrity and reputation of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). The first step is to determine whether clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 24 In *People v. Bean*, 137 Ill. 2d 65 (1990), our supreme court stated:

"Undeniably, a criminal defendant has a general right to be present at every stage of his trial, including jury selection. [Citations.] This court and the United States Supreme Court, however, have limited the situations in which the denial of this broad right of presence constitutes a violation of the Illinois and United States Constitutions." *Id.* at 80.

¶ 25    Under the Illinois Constitution, the right to be present is not itself a substantial right but is a lesser right intended to secure a substantial right. *Id.* at 80-81. "Thus a defendant is not denied a constitutional right every time he is not present during his trial, but only when his absence results in a denial of an underlying substantial right ***." *Id.* at 81. One such substantial right is the right to an impartial jury. *Id.*

¶ 26    Here, even assuming that his general right to be present was violated, Clayton does not, and cannot, sustain or maintain any claim that he was denied the right to an impartial jury. Rather, he speculates that he may have been able to assist in determining whether Porto needed to be excused or whether one of the other alternate jurors would have been a better choice to replace Porto. Under these circumstances, we hold that plain error did not occur under the Illinois Constitution when Clayton's presence was waived from the inquiries into the alternate juror and Porto. See *id.* at 81-82 (holding that no plain error occurred when a defendant's presence from *in camera voir dire* was waived, as it had no effect on the impartiality of the jury).

¶ 27    Turning to the United States Constitution, the right to be present stems from the due process clause of the fourteenth amendment. *Id.* at 82. "Thus, as long as a defendant's absence from a portion of his trial does not deprive him of due process, there is no violation of a defendant's derivative due process right of presence under the United States Constitution." *Id.* at 83. The United States Supreme Court has held that " 'a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.' " *Id.* (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). "If it does not appear that an unfair trial resulted, the defendant's constitutional rights were not violated; this is true even if a defendant's absence in similar circumstances is usually considered to be improper." *Id.*

¶ 28    In this case, as was the situation in *Bean*, the question we must answer is "[d]id defendant's absence from the *in camera voir dire* cause him to be tried, convicted, and sentenced by a jury prejudiced against him?" *Id.* at 85. The answer in this case, as in *Bean*, is no. As previously mentioned, Clayton actually advances no argument that the jury was not impartial, nor could he make such an argument. The right to presence is not absolute (*id.*), and Clayton's absence from the inquiries made of the alternate juror and Porto did not constitute plain error under the United States Constitution. See *id.* In this regard, we note several federal cases that have reached similar conclusions. See, *e.g.*, *United States v. Peterson*, 385 F.3d 127, 138 (2d Cir. 2004) (holding that the district court judge's meeting with a juror regarding possible misconduct outside the defendant's presence did not deprive him of any constitutional or statutory right and may have actually encouraged the juror to speak openly); *United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002) (*per curiam*) (holding that a district court did not err when it allowed the defendant's counsel to represent him at an *in camera* inquiry into possible juror misconduct); *United States v. Riddle*, 249 F.3d 529, 535 (6th Cir. 2001) (holding that "the right to be present at *voir dire* is not one of those structural rights whose violation constitutes *per se* error. Rather, there must be prejudice in the absence to warrant reversal."); *United States v. Tipton*, 90 F.3d 861, 875 (4th Cir. 1996) (holding, *inter alia*, that "if there be a

- 6 -

category of plain errors affecting substantial rights 'independent of any prejudicial impact,' absence from portions of a jury *voir dire* is not among them"); *United States v. Brown*, 571 F.2d 980, 987 (6th Cir. 1978) (holding that "[a]n in-chambers conference concerning the dismissal of a juror, while a stage of the trial within the meaning of [Federal Rule of Criminal Procedure 43], is not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present").

¶ 29 For the foregoing reasons, we conclude that no error occurred when Clayton's presence at the questioning of an alternate juror and the sitting juror Porto was waived by defense counsel. Accordingly, we uphold the procedural default of this issue.

¶ 30 For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 31                                          III. CONCLUSION

¶ 32 The judgment of the circuit court of Kankakee County is affirmed.

¶ 33 Affirmed.